United States Court of Appeals,

Eleventh Circuit.

No. 94-6058.

Marcia M. EDWARDS, Plaintiff-Appellant,

v.

WALLACE COMMUNITY COLLEGE, Robert McConnell, Connie Vardaman, Joyce Howell, B. Gene Burton, Leighann Swindal, Defendants-Appellees.

April 19, 1995.

Appeal from the United States District Court for the Southern District of Alabama. (No. CV 92-0265-BH-S), William Brevard Hand, Judge.

Before KRAVITCH, Circuit Judge, GODBOLD and RONEY, Senior Circuit Judges.

GODBOLD, Senior Circuit Judge:

Ms. Marcia Edwards appeals from the district court's summary judgment for defendants. We affirm.

BACKGROUND

After obtaining a right to sue letter from the E.E.O.C., Edwards, an African-American, brought several claims pursuant to Title VII, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1983 against the defendants, Wallace Community College Selma (WCCS), Dr. Robert McConnell, Connie Vardaman, Joyce Howell, and Leighann Swindal,[1] alleging racial discrimination. Dr. McConnell, Vardaman, Howell, and Swindal are all employees of WCCS.

Edwards was employed at WCCS as a word processing specialist, a newly created position, from September 1990 until her termination during July 1991. At the time of plaintiff's employment with WCCS

---

[1]Gene Burton, Business Manager of WCCS, originally was named as a defendant but later was dropped by the plaintiff.

Dr. McConnell was the Vice-President of WCCS, and he acted as Edwards' supervisor during the last week of her employment; Vardaman was the secretary for the President, Dr. Julius Brown; Howell was a secretary and taught computer classes for WCCS personnel; and Swindal was a secretary for the Business Manager/Treasurer of WCCS. With the exception of her last week of employment Edwards was supervised by Dr. Brown.

Edwards alleges that the defendants influenced Dr. Brown to discriminatorily discharge her [2] and that defendants created a hostile environment, violating her civil rights.

DISCUSSION

I. Standard of Review

For issues on which they would not have the burden of proof at trial, the defendants, as the moving parties in this motion for summary judgment, must demonstrate that there is an absence of evidence supporting Edwards' claims. For issues on which they would have the burden of proof at trial the defendants must make an affirmative showing that on all essential elements on which they have the burden of proof at trial, no reasonable jury could find for the non-moving party, the plaintiff in the case at bar. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115-17 (11th Cir.1993) (thorough discussion of the standard of review for a motion for summary judgment). We review *de novo* the district court's grant of a motion for summary judgment.

_____

[2]While Edwards concedes that Dr. Brown was ultimately responsible for terminating her, he was not named as a defendant in this action or any other action relevant to the events at issue.

## II. Title VII

Edwards sues WCCS and Dr. McConnell in his official capacity for alleged violations of Title VII. [3] R. 83 at ¶¶ 4-5. The remaining individual defendants are not sued pursuant to Title VII. *Id.* at ¶¶ 6-8.

## A. Disparate Impact

A disparate impact claim under Title VII charges that a facially neutral practice or test of the employer led to a discriminatory impact on a particular group and that the test or practice cannot be justified as a business necessity. *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971); *Stephen v. PGA Sheraton Resort, Ltd.,* 873 F.2d 276, 279 (11th Cir.1989). A plaintiff must identify a specific employment practice that leads to the disparate impact. [4] *Fitzpatrick,* 2 F.3d at 1117. A plaintiff also must make a comparison of the racial composition of persons in the labor pool qualified for the position at issue with those persons actually holding that position, and he/she must demonstrate that the allegedly discriminatory practice or test is connected to the disparate impact. *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 657, 109 S.Ct. 2115, 2125, 104 L.Ed.2d 733 (1989). A plaintiff is

---

[3]"Individual capacity suits under Title VII are ... inappropriate." *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991).

[4]Pursuant to the 1991 amendments to Title VII the plaintiff may demonstrate that the practices that combine to create the employer's decisionmaking process cannot be separated. If the plaintiff makes such a showing, then the decisionmaking process can be analyzed for disparate impact. 42 U.S.C. § 2000e-2(k)(1)(A), (B) (1991). Edwards did not allege such a situation.

not required to prove a discriminatory motive. *Griggs,* 401 U.S. at 432, 91 S.Ct. at 854.

Edwards' disparate impact claim fails because: (1) she failed to identify a practice or test of WCCS used to terminate employees that led to a discriminatory impact on African-Americans and, more specifically, that affected her; (2) she accordingly failed to connect an allegedly discriminatory practice to the asserted disparate impact; and (3) she failed to make the required statistical comparison.[5]

B. Disparate Treatment

A plaintiff asserting disparate treatment is required to prove discriminatory animus on the part of the defendant. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804-05, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). The employee has a cause of action against the employer by naming either the employer or supervisory employees as agents of the employer. *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991). Edwards contends that WCCS and Dr. McConnell discriminated against her by discriminatorily discharging her and by creating and/or permitting a racially hostile work environment.

*1. Discharge*

To succeed with her discriminatory discharge claim Edwards must show "(1) that [she] is a member of a protected minority, (2)

---

[5]Although Edwards does present a statistical analysis of the racial composition of full-time secretarial/clerical personnel at WCCS, she does not make the required comparison of the personnel to the racial composition of the labor market for those positions.

that [she] was qualified for the job from which [she] was discharged, (3) that [she] was discharged, and (4) that [her] former position was filled by a non-minority." *Jones v. Lumberjack Meats, Inc.,* 680 F.2d 98, 101 (11th Cir.1982). *See also McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Edwards failed to present evidence that her position was filled by a non-minority following her discharge.[6]

Edwards correctly says that a prima facie case is not wholly dependant upon meeting the fourth requirement of the *McDonnell Douglas* test. A plaintiff may have a prima facie case based on the first three requirements despite the fact that the employer hired a minority to fill the vacancy left by the plaintiff. *Howard v. Roadway Express, Inc.,* 726 F.2d 1529, 1534-35 (11th Cir.1984). However, the court must consider whether the fact that a minority was hired overcomes the inference of discrimination otherwise created by the evidence presented by the plaintiff. Courts considering such a situation have looked at several factors including the length of time between the discharge and the replacement, whether the replacement by the hired minority occurred after the filing of an E.E.O.C. complaint, and, if the hired person had a history with the employer, whether it was a positive history. *See Howard,* 726 F.2d at 1525; *Jones v. Western Geophysical Co. of Am.,* 669 F.2d 280 (5th Cir.1982) (hiring of replacement occurred almost a year later, after a complaint was filed with the E.E.O.C.,

---

[6]Defendants state that the job duties of the position were assumed by an African-American hired after Edwards' discharge. Appellees' Brief at 28 n. 12. Edwards points to no contradictory evidence.

and the person hired already had been hired and fired for poor performance by the employer). Edwards has not presented any evidence that the filling of the vacancy by a minority was pretextual.

*2. Hostile Environment*

Edwards has the burden of proof at trial to demonstrate a hostile environment. As the moving parties in the motion for summary judgment, the defendants must either "put on evidence affirmatively negating the material fact or instead demonstrate[ ] an absence of evidence on the issue." *Fitzpatrick,* 2 F.3d at 1116. To survive the motion for summary judgment, Edwards then must "show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion," or Edwards must "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* at 1116-17.

To succeed at trial with her hostile environment claim Edwards must demonstrate that the actions of the defendants altered the condition of the workplace, creating an objectively abusive and hostile atmosphere. *Harris v. Forklift Sys., Inc.,* --- U.S. ----, ----, 114 S.Ct. 367, 370-71, 126 L.Ed.2d 295 (1993) ("When the workplace is permeated with "discriminatory intimidation, ridicule, and insult' that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated.") (internal citations omitted). For example, the racial slurs allegedly spoken by co-workers had to be so "commonplace, overt and denigrating that

they created an atmosphere charged with racial hostility." *E.E.O.C. v. Beverage Canners, Inc.,* 897 F.2d 1067, 1068 (11th Cir.1990). In deciding whether a hostile environment was created factors to consider include the frequency of the discriminatory conduct, the severity of the discriminatory conduct, whether the conduct is threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's performance at work. *Harris,* --- U.S. at ----, 114 S.Ct. at 372. The employer will be held liable if it fails to discover a hostile atmosphere and to take appropriate remedial steps. *Busby,* 931 F.2d at 785. *See also Henson v. City of Dundee,* 682 F.2d 897, 901 (11th Cir.1982). A plaintiff may have a viable hostile environment claim even if the racial remarks were not directed at her. *Busby,* 931 F.2d at 785.

The district court did not err in holding that the summary judgment record did not substantiate a hostile work environment claim. We have reviewed the summary judgment material. As the court held, some of the incidents relied upon were not made known to Edwards until after her termination and, therefore, could not have contributed to her subjective view of a hostile environment. *See Harris,* --- U.S. at ----, 114 S.Ct. at 370 (the plaintiff must subjectively view the conduct as hostile). Other alleged incidents, as the court correctly held, were purely speculation by Edwards. Still others concerned statements said to have been made to third parties by fourth parties. Apart from hearsay problems, there was insufficient information as to when the statements were made, how knowledge of them was acquired, and when Edwards was informed of them (if she was). In her answers to interrogatories,

Edwards refers generally to racial references concerning her made by co-worker Vardaman. These too were not identified as to how they were made, to whom they were made, and how and when they were made know to Edwards. Edwards also says that she did not receive information pertinent to her employment that Caucasian employees did receive. However, in her deposition she conceded that she cannot cite any examples of Caucasian employees receiving information that was withheld from her. Once the evidentiary materials inappropriately relied upon are laid aside, we cannot say that the district court erred in holding that Edwards had not met her burden to defeat summary judgment concerning a hostile environment.[7]

## III. Section 1983

Edwards asserts claims pursuant to § 1983, alleging that the defendants violated the equal protection clause of the Fourteenth Amendment. She contends that the defendants discriminatorily fired

---

[7]Our consideration of this case, especially the hostile environment issue, has been hampered by plaintiff's brief. A brief must contain:

> a statement of the facts. A proper statement of facts reflects a high standard of professionalism. It must state the facts accurately, those favorable and those unfavorable to the party. Inferences drawn from facts must be identified as such....

11th Cir.R. 28-2(h)(ii) (1994). Plaintiff's statement of facts, consuming more than half of her brief, is a mixture of facts and arguments and inferences. It is larded with allegations, hearsay, hyperbole, and pejoratives. It makes no effort to distinguish between inferences and facts or to present facts unfavorable to the plaintiff. We have reviewed the record, but without the help to which we are entitled.

her[8] and created a hostile workplace, and she sues the individual defendants for equitable relief in their official capacities and for equitable and monetary relief in their individual capacities. R. 83 at ¶¶ 5-8. To have a cause of action pursuant to § 1983, the plaintiff must allege that a person deprived her of a federal or constitutional right and that the person was acting under color of law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923-24, 64 L.Ed.2d 572 (1980).

The Supreme Court has defined "acting under color of law" as acting with power possessed by virtue of the defendant's employment with the state. *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988). " "[S]tate employment is generally sufficient to render the defendant a state actor.' " *Id.* (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935 n. 18, 102 S.Ct. 2744, 2752 n. 18, 73 L.Ed.2d 482 (1982)). The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual. *Monroe v. Pape,* 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). Not all actions by state employees are acts under color of law. "[C]ases have declined to find liability under § 1983 against a co-employee for harassment when the harassment did

---

[8] For the reasons stated above, plaintiff's claim of discriminatory discharge due to the alleged influence of the individual defendants upon Dr. Brown is without merit. Moreover, any influence Dr. McConnell had on Dr. Brown's decision to discharge plaintiff was proper within his discretionary duties as Vice-President and as a supervisor of Edwards, so long as his intent was not discriminatory. Edwards has not presented factual evidence suggesting that any influence Dr. McConnell had on the decision to terminate her originated from discriminatory motives. Therefore, we will address only her § 1983 claim regarding a hostile environment.

not involve use of state authority or position." *Woodward v. City of Worland,* 977 F.2d 1392, 1400 (10th Cir.1992) (defendant law enforcement officers were not liable under § 1983 for sexually harassing dispatchers employed by a separate employer); *cert. denied,* --- U.S. ----, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993). *See Hughes v. Halifax County Sch. Bd.,* 855 F.2d 183 (4th Cir.1988) (co-workers were not acting with state authority when they taunted plaintiff and performed a mock hanging of plaintiff), *cert. denied,* 488 U.S. 1042, 109 S.Ct. 867, 102 L.Ed.2d 991 (1989); *Murphy v. Chicago Transit Authority,* 638 F.Supp. 464 (N.D.Ill.1986) (staff attorneys who sexually harassed fellow staff attorney were not liable pursuant to § 1983). *See also Dang Vang v. Vang Xiong X. Toyed,* 944 F.2d 476 (9th Cir.1991) (citing *Murphy* for guidance but concluding that the defendant who was employed by the state to assist refugees in finding employment and who sexually assaulted women after enticing them to see him for job hunting purposes was a state actor liable under § 1983).

We hold that defendants Vardaman, Howell, and Swindal, all coemployees of Edwards and without any supervisory authority over Edwards, are not liable pursuant to § 1983. These defendants did not use their state authority to create an environment hostile to Edwards. "The mere fact that [the defendants] were state employees or that the offending acts occurred during working hours is not enough." *Woodward,* 977 F.2d at 1401.

Additionally, Edwards is lacking enough admissible factual evidence to show that the alleged actions of Vardaman, Howell, and Swindal rose to the level of creating an objectively hostile

workplace. Edwards did not know about the remarks she attributed to Vardaman until after her (Edwards') termination. Edwards asserts that Swindal and Howell gave her false information and withheld information from her that was given to Caucasian employees, but she does not cite who received such information. She contends that she was given office space and equipment inferior to that given to Caucasian employees but cites no examples of such for comparison. Furthermore, Edwards complains that she did not receive word processing training until shortly before her termination, whereas other employees supposedly received such training from the beginning of their employment. However, Edwards was hired as a word processing specialist, a newly created position, presumably with at least a basic understanding of word processing. Overall, Edwards has made allegations without citing any substantial concrete evidence for support.

A. Qualified Immunity

"[A]n official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, [including a defense of qualified immunity]." *Kentucky v. Graham,* 473 U.S. 159, 166-67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Except under rare circumstances government employees will have qualified immunity from suits

against them in their individual capacities. *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (*en banc* ). A court reviewing a defense of qualified immunity must consider how the law had been applied in concrete, factual circumstances at the time of the allegedly discriminatory action. *Id.*

Discriminatory intent is an element that must be proved in a disparate treatment claim. However, Edwards has not presented any concrete evidence of discriminatory intent on the part of Dr. McConnell. Accordingly, although intent is irrelevant for a qualified immunity inquiry per se, *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738-39, it is relevant if intent is an element of the underlying alleged constitutional violation. *Fiorenzo v. Nolan,* 965 F.2d 348, 352 (7th Cir.1992) ("Therefore, at the summary judgment stage, the district court properly considered whether the plaintiffs factually supported their allegations as to [the defendant's] state of mind."); *Hull v. Cuyahoga Valley Joint Voc. Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 512 (6th Cir.) ("plaintiff must present direct evidence that the officials' actions were improperly motivated" by racial discrimination when the officials have asserted qualified immunity as a defense) (internal quotations and citation omitted), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991); *Auriemma v. Rice,* 910 F.2d 1449, 1453 (7th Cir.1990) (*en banc* ), *cert. denied,* 501 U.S. 1204, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991).[9]

---

[9]"Qualified immunity does not pertain to claims for injunctive or declaratory relief, because these claims are considered to be official capacity claims against the relevant governmental entity." Martin A. Schwartz & John E. Kirklin, 1 *Section 1983 Litigation: Claims, Defenses, and Fees* § 9.12 (2d

B. Sovereign Immunity

Suing individuals in their official capacities is "another way of pleading an action against an entity of which an officer is an agent." *Graham,* 473 U.S. at 165, 105 S.Ct. at 3105. A state, a state agency, and a state official sued in his official capacity are not "persons" within the meaning of § 1983, thus damages are unavailable; but a state official sued in his official capacity is a person for purposes of § 1983 when prospective relief, including injunctive relief, is sought. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, n. 10, 109 S.Ct. 2304, 2312, n. 10, 105 L.Ed.2d 45 (1989). However, because Edwards fails to substantiate the underlying alleged constitutional violation by Dr. McConnell with factual evidence, her claim fails.

CONCLUSION

The judgment of the district court is AFFIRMED.

---

ed. 1991) (footnote omitted). *See also Wood v. Strickland,* 420 U.S. 308, 314 n. 6, 95 S.Ct. 992, 997 n. 6, 43 L.Ed.2d 214 (1975); *Fortner v. Thomas,* 983 F.2d 1024, 1029 (11th Cir.1993). However, since Edwards' underlying claim for discrimination by Dr. McConnell fails due to a lack of factual evidence, her claims against him for injunctive relief fail as well.