Tony GRIER, Plaintiff,

v.

PARTEK INDUSTRIES, INC., Defendant.

No. 94–D–1268–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Sept. 13, 1995.

Lee Winston, Birmingham, AL, for plaintiff.

Rex M. Lamb, III, Lisa L. Ballentone, Atlanta, GA, Charles E. Vercelli, Jr., Montgomery, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is defendant Partek Insulations Inc.'s motion for summary judgment filed May 12, 1995. The plaintiff responded in opposition on July 31, 1995, to which the defendant replied on August 14, 1995. After

careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the defendant's motion is due to be granted.

## JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 as the plaintiff alleges a violation of 42 U.S.C. § 2000e *et seq.,* Title VII.[1] Jurisdiction is also proper as plaintiff alleges a violation of 42 U.S.C. § 1981. *See* 28 U.S.C. § 1331. Personal jurisdiction and venue are not contested.

## SUMMARY JUDGMENT STANDARD

■ On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

■ The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed. R.Civ.P. 56(e).

■ In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

## FINDINGS OF FACT

This case is composed of a disparate treatment action under Title VII based on racial

---

1. The plaintiff has exhausted his administrative remedies as he filed a claim with the Equal Employment Opportunity Commission within 100 days of the last discriminatory act and has filed this judicial action within 90 days of receiving his right to sue letter from the Equal Employment Opportunity Commission.

discrimination and a 42 U.S.C. § 1981 action also alleging racial discrimination. The main issue is whether the plaintiff Tony Grier (hereafter "Mr. Grier") was terminated because of his race. This controversy centers around Mr. Grier's November 15, 1991 Partek Insulations Inc. (hereafter "Partek") employment application in which he stated that he had not been convicted of a felony within the past five years. Pl.'s Ex. 6. Other issues also include whether the plaintiff was discriminated against because of his race with respect to promotions, job assignments, pay, training, overtime, and scheduling.

This action arises out of the termination of plaintiff Mr. Grier's employment at the Phenix City Plant of defendant Partek. Mr. Grier's employment with Partek began on January 13, 1992, when he was hired as a pipe machine helper. Pl.'s Ex. 15 at 14; Def.'s Ex. B at ¶ 4; Def.'s Ex. C at ¶ 3; Def.'s Ex. D at no. 1. Mr. Grier received raises in salary on March 9, 1992 and May 4, 1992. Def.'s Ex. B at ¶¶ 4–5. However, in July 1992, he was counseled about some remarks that he made about another employee. Def.'s Ex. B at ¶ 5; Def.'s Ex. C at ¶ 4. Further, on July 29, 1992, Mr. Grier received a warning about his poor attendance and his failure to follow proper call-in procedures, and again, on August 31, 1992, he was warned about his poor attendance. *Id.* Thereafter, on December 8, 1992, Mr. Grier's supervisor, Gary Jones (hereafter "Mr. Jones"), gave him a performance evaluation in which he addressed Mr. Grier's attendance problem. *Id.*

On approximately September 15, 1993, Partek's Human Resources Assistant, Kathy Rice (hereafter "Ms. Rice"), reported that she had been sexually harassed by Mr. Grier. Def.'s Ex. B at ¶ 6; Def.'s Ex. C at ¶ 5; Def.'s Ex. D at no. 3. Mr. Grier was immediately suspended without pay pending the outcome of Partek's investigation. Def.'s Ex. B at ¶ 6; Def.'s Ex. C at ¶ 5. Mr. Grier denied the allegations and further stated that he was not alone with Ms. Rice. Pl.'s Ex. 1 at 45–46; Pl.'s Ex. 2 at ¶¶ 3, 5, 11.

During the course of the investigation of the incident, Ms. Rice reported to the company that she had received a phone call from an unidentified male who told her that Grier had a criminal record for a similar offense. Def.'s Ex. B at ¶ 7. As a result, Partek had a background check performed on Mr. Grier in order to determine the accuracy of the report concerning his alleged criminal record. *Id.*

Prior to meeting with Mr. Grier to discuss the alleged sexual harassment, Human Resource Manager Richard Howard (hereafter "Mr. Howard") was informed by the security company which conducted the background investigation that Mr. Grier had been arrested and charged with a felony in March 1991 for possession of a controlled substance. Def.'s Ex. B at ¶ 8; Def.'s Ex. C at ¶ 8; Def.'s Ex. D at nos. 6 & 7. The security company further revealed to Mr. Howard that Mr. Grier had been convicted in June 1991 and had been sentenced to three years in prison consisting of one to serve and the remainder on probation. *Id.* However, on his employment application, Mr. Grier responded that he had not been convicted of a felony within the past five years. Pl.'s Ex. 6. In closing the interview, Mr. Howard asked Mr. Grier whether he had been convicted of a felony, and Mr. Grier, looking somewhat confused, responded "no." Pl.'s Ex. 11.

On September 21, 1993, Mr. Grier returned to work and was told that the investigation of the sexual harassment complaint was inconclusive. Pl.'s Ex. 11; Def.'s Ex. B at ¶ 10; Def.'s Ex. C at ¶ 6; Def.'s Ex. D at no. 3. On September 24, 1993, Mr. Jones and Mr. Howard confronted Mr. Grier with the information regarding his felony conviction. Pl.'s Ex. 12; Def.'s Ex. B at ¶¶ 11–12; Def.'s Ex. C at ¶¶ 8–10; Def.'s Ex. D at nos. 6–8. Mr. Grier attempted to explain that he had not been convicted of a felony. Pl.'s Ex. 12.[2] Nevertheless, Mr. Grier was terminated during the September 24, 1993 meeting on the grounds that he violated company policy by falsifying information on his employment application and for misrepresentation. Def.'s

---

**2.** Mr. Howard wrote in documentation of the termination session that Mr. Grier "said that he talked to his lawyer and was told that he was not convicted." Pl.'s Ex. 12.

Ex. A at 42; Def.'s Ex. B at ¶¶ 8–12; Def.'s Ex. C at ¶¶ 7–10; Def.'s Ex. D at no. 8.

Mr. Grier argues that *if he had been white, he would have been given an opportunity to explain* that he did not have a felony conviction, because he was sentenced under the First Offender Act.[3] Pl.'s Resp. to Def.'s Mot. for Summ.J. at 2. In support, he contends that a white employee was allowed to change his answers on his employment application, and therefore, race was the motivating reason behind his discharge. Pl.'s Resp. to Def.'s Mot. for Summ.J.

Mr. Grier further contends that Partek's continued insistence that he had a felony conviction while possessing evidence to the contrary demonstrates that the alleged felony conviction is not the cause of the termination. Pl.'s Resp. to Def.'s Mot. for Summ.J. Mr. Grier points to the fact that after learning he had not been convicted of a felony, Partek did not ask him to return to work. Pl.'s Resp. to Def.'s Mot. for Summ.J. Partek contends that Mr. Grier never asked to return to work, and based on the circumstances and the law, they had no affirmative duty to rehire him. Def.'s Reply to Pl.'s Resp. The plaintiff also alleges that Partek discriminated against him on the basis of race, not only in his termination, but in other aspects of his employment such as promotions, job assignments, pay, training, overtime, scheduling and "other terms, conditions and privileges of employment." Pl.'s Compl. at ¶ 12.

In its motion for summary judgment, Partek asserts that the employment decisions concerning Mr. Grier were not based on his race, but were based upon legitimate, nondiscriminatory business reasons. Def.'s Reply to Pl.'s Resp. Specifically, Partek asserts the following: (1) that Mr. Grier was given an opportunity to explain the circumstances surrounding his criminal conviction; (2) that even if Mr. Grier were not convicted of a felony, race did not motivate the termination of his employment; and (3) that no evidence exists to support the general allegations of discrimination.

The court, before discussing the law as it applies to the plaintiff's allegations, makes the following general conclusion of law:

Gary Jones and Richard Howard are "agents" of defendant for Title VII purposes. Title VII imposes liability on an employer for the improper acts of its agents. 42 U.S.C. § 2000e(b); *see also Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1559–60 (11th Cir.1987) (holding that an agent is one who occupies a supervisory position with the authority to alter the terms and conditions of an employee's employment).

## DISCUSSION

### A. *Discriminatory Discharge*

Title VII forbids discrimination on the basis of sex, race, or national origin in a wide range of employment practices, including hiring, discharge, and promotion. *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir.1994) (citing *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir.1992)).[4] The theory of "disparate treatment" has been stated by the Supreme Court of the United States as follows:

---

**3.** Mr. Grier was sentenced for the possession of a controlled substance under the First Offender's Act. Pl.'s Ex. 1. Until Mr. Grier violates the condition of the First Offender program, the terms of the Act provide that there is no conviction of guilt:

WHEREAS, no adjudication of guilt has been made subsequent to the entry of the plea or verdict shown above, and

WHEREAS, the Court has reviewed the defendant's criminal record on file with the Georgia Crime Information Center, and

WHEREAS, the defendant has not previously been convicted of a felony or used the provisions of the First Offender Act (Ga.Laws 1968, p. 364).

NOW, THEREFORE, the defendant consenting hereto, it is the judgment of the Court that no judgment of guilt be imposed at this time but that further proceedings are deferred and the defendant is hereby sentenced to confinement for the period of Three (3) yrs.

Pl.'s Ex. 1.

**4.** 42 U.S.C.A. § 2000e–2(a)(1) (West 1981) provides: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."

[Disparate treatment is] the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. [citation omitted]. Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII.

*International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977). Thus, the essence of disparate treatment is different treatment: that blacks are treated differently than whites; women differently than men.

■ In order for Mr. Grier to prevail on a Title VII claim he must show that Partek intentionally discriminated against him when making the employment decisions which gave rise to the suit. While direct proof of discriminatory intent may be preferred it is not a *sine qua non. Id.* at 334–40, 97 S.Ct. at 1854–57. In cases of alleged discrimination not supported by direct proof, such as the present action, but rather by circumstantial evidence, the plaintiff must first demonstrate a prima facie case of unlawful discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To demonstrate a prima facie case of discriminatory discharge, Mr. Grier must show: "(1) that [he] is a member of a protected minority, (2) that [he] was qualified for the job from which [he] was discharged, (3) that [he] was discharged, and (4) that [his] former position was filled by a non-minority." *Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir.1995) (quoting *Jones v. Lumberjack Meats, Inc.,* 680 F.2d 98, 101 (11th Cir.1982)); *see also McDonnell*

*Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).[5]

■ Once Mr. Grier satisfies his burden by demonstrating a prima facie case of discrimination, a presumption of impermissible discrimination arises. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The burden of production then shifts to Partek to articulate a legitimate nondiscriminatory reason for the adverse employment decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 248, 101 S.Ct. at 1089. Should Partek fail to meet its burden of production once Mr. Grier demonstrates prima facie discrimination, "the unrebutted presumption of discrimination stands." *Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1061 (11th Cir.1994) (citing *Joshi v. Florida State University Health Ctr.,* 763 F.2d 1227, 1236 (11th Cir.), *cert. denied,* 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 293 (1985)).

■ The Eleventh Circuit has determined that this intermediate burden is "exceedingly light." *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1019 (11th Cir.1994) (quoting *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir.1983)). Thus, to overcome the presumption of discrimination demonstrated by the plaintiff-employee, the defendant-employer "need only offer admissible evidence sufficient to raise a genuine issue of material fact as to whether it had a legitimate reason for not hiring the plaintiff." *Turnes,* 36 F.3d at 1061 (citing *Hill v. Seaboard Coast Line R.R. Co.,* 767 F.2d 771, 774 (11th Cir.1985)).

In the case at bar, Mr. Grier contends that he was terminated because of his race. Def.'s Ex. A at 70–71. However, Partek responds that Mr. Grier was terminated for violating company policy by falsifying information on his job application and for misrepresentation. Def.'s Ex. B at ¶¶ 8–12; Def.'s Ex. C at ¶¶ 7–10; Def.'s Ex. D at no. 8. Specifically, Partek asserts that Mr. Grier

---

**5.** The court stresses that the Eleventh Circuit has repeatedly emphasized that an overly strict formulation of the components of a prima facie case is to be avoided. *Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548, 1555 n. 12 (11th Cir. 1995); *Carter v. City of Miami,* 870 F.2d 578, 583 (11th Cir.1989). The analysis is fact specific: "would an ordinary person reasonably infer discrimination if the facts presented remained unrebutted?" *Id.*

was terminated after it received information that he had been convicted of felony possession of a controlled substance and had been sentenced to three years in prison, with one to serve and two on probation, all within 9 months prior to submitting his employment application at Partek. Def.'s Ex. B at ¶¶ 8–12; Def.'s Ex. C at ¶¶ 7–10; Def.'s Ex. D at no. 6. Mr. Grier represented in his application that he had not been convicted of a felony in the past five years. Def.'s Ex. A at 17–18; 21, 1. 7–10; Def.'s Ex. 2; Def.'s Ex. B at ¶ 8; Def.'s Ex. C at ¶ 8. On September 21, 1993, Partek's Human Resources Manager, Mr. Howard, asked Mr. Grier whether he had been convicted of a felony and Grier replied "no." Def.'s Ex. B at ¶ 10; Def.'s Ex. C at ¶¶ 6–7. Partek contends that it then terminated Mr. Grier on September 24, 1993, because the information it received about Mr. Grier's criminal conviction demonstrated that both his answer on the employment application and his reply to Mr. Howard were false. Def.'s Ex. B at ¶¶ 11–12; Def.'s Ex. C at ¶¶ 8–10; Def.'s Ex. D at no. 8.

The court finds that Mr. Grier has satisfied the first three elements of the prima facie case because he is black, and he has proved that Partek discharged him, even though he performed his duties without complaint for over twenty-two months. The fourth requirement of the *McDonnell Douglas* test requires a more thorough analysis by the court.

■ The court finds that Mr. Grier's position was filled by a minority following his discharge.[6] However, Mr. Grier claims that he was replaced by someone outside of his protected category as his replacement was a Pacific Islander from American Samoa, Setu Fiame (hereafter "Mr. Fiame") rather than a black individual. Consequently, Mr. Grier claims that he has established a prima facie case.

■ The court recognizes that a prima facie case is not wholly dependent upon meeting the fourth requirement of the *McDonnell Douglas* test. Even though Par-

tek hired a minority to fill the vacancy left by Mr. Grier, the court may determine that a prima facie case has been established based only on the first three requirements. *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir.1995) (citing *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1534–35 (11th Cir.1984)). However, the Eleventh Circuit has provided several factors which

the court must consider [in determining] whether the fact that a minority was hired overcomes the inference of discrimination otherwise created by the evidence presented by the plaintiff. [These factors] includ[e] the length of time between the discharge and the replacement, whether the replacement by the hired minority occurred after the filing of an E.E.O.C. complaint, and, if the hired person had a history with the employer, whether it was a positive history. *See Howard*, 726 F.2d at 1525 [1535]; *Jones v. Western Geophysical Co. of Am.*, 669 F.2d 280 (5th Cir. 1982)....

*Edwards*, 49 F.3d at 1521.

Mr. Grier was discharged on September 24, 1993. Def.'s Ex. B at ¶¶ 11–12; Def.'s Ex. C at ¶¶ 9–10; Def.'s Ex. D at no. 8. On or about December 14, 1993, Mr. Grier filed a charge of race discrimination against Partek with the EEOC. Def.'s Ex. A at 125. On July 15, 1994, the EEOC issued a notice of right to sue to Mr. Grier without rendering a determination as to the charge filed. Def.'s Ex. A at 125–26. On September 30, 1994, after receiving a notice of right to sue from the EEOC, Mr. Grier filed this case alleging that Partek discriminated against him based upon his race in violation of Title VII and in violation of 42 U.S.C. § 1981.

Regarding the replacement of Mr. Grier, the defendants state in response to plaintiff's interrogatories as follows:

Plaintiff was replaced by Setu Fiame a Pacific Islander from American Samoa. Mr. Fiame was a temporary employee in Plaintiff's former department. Mr. Grier's

6. Defendant Partek states that the job duties of the position were assumed by a Pacific Islander from American Samoa. Def.'s Reply to Pl.'s Resp. Mr. Grier points to no contradictory evi-

dence. Therefore, the court finds that the evidence reveals that Mr. Grier was replaced by a Pacific Islander from American Samoa. *See* Pl.'s Ex. 17 at no. 5.

job was posted in October 1993 and no current employees expressed an interest in the position. At that time, there were two temporary employees working in the pipe department. Mr. Fiame expressed an interest in the position and was hired on November 16, 1993.

Pl.'s Ex. 17 at no. 5. The court stresses that it will not weigh the third factor, that Mr. Fiame had a history with Partek, because no evidence was submitted to the court whether it was a positive history. However, the court finds that the time frame clearly reveals that the job was filled approximately a month before the filing of an EEOC complaint. In addition, Mr. Grier has not submitted to the court any evidence that the filling of the vacancy by a minority was pretextual. *See Edwards,* 49 F.3d at 1521. Therefore, the court concludes that the hiring of Mr. Fiame was not intended to refute a charge of discrimination, and as a result, Mr. Grier has failed to demonstrate a prima facie case of racial discrimination.

Because Mr. Grier did not make out a prima facie case, he cannot prevail merely by showing that the articulated reason for his termination was probably not the true reason. *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984). However, notwithstanding Mr. Grier's failure to establish a prima facie case, the court also finds that Mr. Grier has failed to produce any evidence that demonstrates his race was the motivation for the decision to discharge him from employment. The thrust of Mr. Grier's argument is that he was not allowed to explain to the company that he had been sentenced as a first offender and that if he had been white, he would have been given an opportunity to explain the situation. Def.'s Ex. A at 55–56, 70–75; Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2; Pl.'s Ex. 2 at 13. Specifically, Mr. Grier points to the fact that a white employee, David Long, was allowed to correct misinformation on his employment application in a similar situation. Pl.'s Resp. to Def.'s Mot. for Summ. J. However, the court finds that the evidence, including *Mr. Grier's own exhibits submitted in support of his response, shows that he was given an opportunity to explain,* the only

racial motive alleged to have induced Partek to terminate him.

The evidence reveals that on September 21, 1993, Mr. Howard asked Mr. Grier if he had been convicted of a felony, and he responded "no." Def.'s Ex. B at ¶ 10; Def.'s Ex. C at ¶¶ 6–7. Thereafter, on September 24, 1993, Mr. Grier's supervisor, Mr. Jones, and Mr. Howard met with him and confronted him with the information regarding his felony conviction. Def.'s Ex. B at ¶¶ 11–12; Def.'s Ex. C at ¶¶ 8–10. Mr. Howard asked Mr. Grier why he had not been truthful about his felony conviction, and Mr. Grier responded that since he had pled guilty to the charge, he was not "convicted" of the charge. *Id.* Mr. Jones and Mr. Howard informed Mr. Grier that they considered him to have been convicted since he had been sentenced to prison for a crime that he pleaded guilty to committing. Def.'s Ex. B at ¶ 12; Def.'s Ex. C at ¶ 10; Pl.'s Ex. 4; Pl.'s Ex. 17 at no. 4.

Mr. Grier did not mention nor attempt to mention his involvement in a first offender program. Pl.'s Ex. 4; Pl.'s Ex. 11 at 2–3; Pl.'s Ex. 12; Pl.'s Ex. 14 at 18; Pl.'s Ex. 16 at 23, 1. 19–25; Pl.'s Ex. 17 at no. 4. Instead, the court finds that his explanations were ambiguous and vague regarding his criminal record. As a result of the foregoing facts, the court concludes that Mr. Grier was clearly given an opportunity to explain his situation and that he failed to do so.

In regards to the David Long (hereafter "Mr. Long") situation, the evidence reveals that Mr. Long realized that he had placed incorrect information on his application, and prior to employment, he corrected the information. Pl.'s Ex. 14 at 16. In this case, Mr. Grier never came forward to change any information on his application, but instead, he refused to correct the information when confronted on two separate occasions. Def.'s Ex. B at ¶ 10–12; Def.'s Ex. C at ¶ 6–10; Pl.'s Ex. 11 at 2–3; Pl.'s Ex. 12. Therefore, the court finds that Mr. Long's situation was not similar to the plaintiff's position. Further, the court finds, and the evidence clearly reveals, that Mr. Grier was not given less of an opportunity than Mr. Long to correct the misinformation on the application.

Mr. Grier emphasizes in his response to the motion for summary judgment that Mr. Howard failed to even consider that Mr. Grier was sentenced under the First Offender Act. Mr. Grier further asserts that Mr. Howard continues to insist that he has been convicted of a felony. In support, Mr. Grier brings to the court's attention the following statements by Mr. Howard which describe the termination meeting:

Q: Tell me what happened in that meeting?

A: He was asked specifically why he answered "no" on his application.

Q: And what was his answer to that? What did he say?

A: All he said was, "I was not convicted of a felony."

Q: Okay. I take it you didn't believe him.

A: No, sir.

Q: And you still don't believe him?

A: No, sir.

Pl.'s Ex. 14 at 18. The court stresses that the plaintiff's reasons for termination must be discriminatory.

██ In other words, the fact that Partek was mistaken in its belief that Mr. Grier had been convicted of a felony does not solely determine that the action was taken due to the plaintiff's race. The court further recognizes that at-will employment contracts can be terminated by either party regardless of whether the employer's motive is justified as long as the reason is not discriminatory. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984). The Eleventh Circuit has specifically stated as follows:

[Plaintiff] may have shown that he was fired for violating a rule that he did not violate. But Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules. "Title VII addresses discrimination." [citation omitted]. "Title VII is not a shield against harsh treatment at the workplace." [citation omitted]. Nor does the statute require the employer to have good cause for

its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. [citations omitted].

*Id.*

In light of the above reasoning, the court finds that the evidence clearly supports the defendant's assertion that Mr. Grier was terminated due to the defendant's belief that he falsified his employment application. The statements by Mr. Howard do not present even a hint of a discriminatory motive. Further, the court reiterates that the statements by Mr. Howard clearly support Partek's assertion that Mr. Grier was given an opportunity to explain the situation.

Mr. Grier contends that Partek's failure to rehire him underscores that there is another motive behind their decision beyond the alleged felony conviction. Pl.'s Resp. to Def.'s Mot. for Summ. J. Specifically, Mr. Grier states that "[i]f the employer fails to state truthfully the basis for its employment decision, one reasonable explanation is that the employer is attempting to hide an illegal reason." *Id.* In support, Mr. Grier cites *Furnco Constr. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), in which the plaintiffs sought employment as bricklayers. *Id.* at 569, 98 S.Ct. at 2945. However, the court finds that Mr. Grier has presented no evidence to indicate that he even inquired about returning to work. Based on this finding, the court concludes that Partek never even gave Mr. Grier a reason for not rehiring him and thus, could not have given him an untruthful reason for its failure to rehire him.

Mr. Grier also argues that his termination was connected to the allegation of sexual harassment made against him by a white female. However, the court finds that such a position cannot be substantiated because the plaintiff admitted that he was not fired because of sexual harassment. Def.'s Ex. A at 44. Further, he was informed that the investigation of the sexual harassment charge was inconclusive, and that based on the outcome of the investigation, the company was not accusing him of sexual harassment. Def.'s

Ex. B at ¶ 10; Def.'s Ex. C at ¶ 6; Def.'s Ex. D at no. 3; Pl.'s Ex. 11. He was also told that he was going to be paid for the time he was suspended from work during the investigation. Def.'s Ex. A at 51–52.

As a result of the foregoing analysis, the court finds that even if Mr. Grier had established a prima facie case of discrimination, he has still failed to demonstrate that the proffered reasons produced by the defendant were not the true reasons for the employment decision. *See Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

### B. *General Allegations of Discrimination*

Mr. Grier also alleges that Partek discriminated against him on the basis of race, not only in his termination, but in other aspects of his employment such as "discipline, promotions, job assignments, pay, transfers, notice of job opportunities, training, receipt of overtime, scheduling, and other terms, conditions, and privileges of employment in violation of [Mr. Grier's] federally protected rights." Pl.'s Compl. at ¶ 12. In support of its motion for summary judgment, Partek asserts Mr. Grier does not proffer any evidence supporting his general allegations of discrimination. Def.'s Brief in Supp. of Mot. for Summ. J. However, in his reply to the motion for summary motion, Mr. Grier does not even refer to these general allegations of discrimination. The court will analyze each of Mr. Grier's claims separately.

First, Mr. Grier claims that Partek discriminated against him because of his race with respect to promotions. Regarding this claim, Mr. Grier fails to present any evidence to the court supporting his allegation. Rather, Mr. Grier admits that he was not chosen for the only contested promotion relevant to this claim because he was terminated. Def.'s Ex. A at 81, 83 & 106. Mr. Grier also admits that he had no knowledge as to why other employees received promotions. Def.'s Ex. A at 102–104 & 122.

Second, Mr. Grier claims that he was discriminated against on the basis of his race concerning job assignments. Again, Mr. Grier presents no evidence to the court supporting his allegation. In fact, he admits that due to his termination he did not get the job assignment he desired. Def.'s Ex. A at 106.

Third, Mr. Grier claims he was discriminated against in terms of pay. Yet again, he fails to proffer any evidence supporting this allegation. Mr. Grier admits that he had an attendance problem and further states that he did not get a raise due to this attendance problem. Def.'s Ex. A at 25–27, 33, 35–36 & 108–109.

Mr. Grier next contends that he was discriminated against in terms of training; however, he again provides no facts supporting this contention. Fifth, Mr. Grier contends that he was discriminated against in receipt of overtime. However, he admits that there was no overtime for which he applied that he did not receive. Def.'s Ex. A at 115–116. He further contends that he was discriminated against because of his race with respect to scheduling. Again, no evidence is set forth to support this contention, and Mr. Grier even admits that he has no idea why this allegation is contained in his complaint. Def.'s Ex. A at 116–117. Finally, Mr. Grier claims that he was discriminated against "in other terms, conditions and privileges of employment." Mr. Grier testified that this "catchall" allegation referred to his termination. Def.'s Ex. A at 117. Therefore, based on the foregoing analysis, the court finds that since Mr. Grier has failed to proffer even the slightest amount of evidence, there is no validity to any of his general allegations of discrimination mention in paragraph 12 of his complaint.

### C. *Section 1981*

■ Mr. Grier also alleges that he was racially discriminated against in violation of 42 U.S.C. § 1981. Section 1981 prohibits race discrimination in making and enforcing contracts and is a statutory remedy available in both private and public sectors.[7] *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975). Prior to the 1991 amendments to the Civil Rights Act of 1964,

---

**7.** 42 U.S.C. § 1981 provides in relevant part: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens."

the United States States Supreme Court narrowly construed the right "to make and enforce contracts" clause of § 1981(a). In *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Court held that § 1981 "covers conduct only at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through the legal process." Thus, conduct affecting "the terms and conditions of continuing employment" was not actionable. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1160 (11th Cir.1993) (quoting *Patterson*, 491 U.S. at 179, 109 S.Ct. at 2373–74).

■ In 1991, the Civil Rights Act (hereafter the "Act") was amended, expanding the coverage of 42 U.S.C. § 1981 to include claims of racial discrimination based upon wrongful termination. Pub.L. No. 102–166, S. 1745, 102d Cong., 1st Sess. (1991), U.S.Code Cong. & Admin.News 1991 at 549 (Congress passed the Act on November 7, 1991, which was signed into law on November 21, 1991, by former President George Bush.). The Act effectively reverses *Patterson* and its progeny and now permits claims for intentional racial discrimination in "... the making, performance, modification, and termination of [employment] contracts," as well as "... the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Hence, the Act maximizes the overlap between Title VII and § 1981 and allows an aggrieved party alleging intentional discrimination to alternatively seek recourse under both statutes.[8]

■ Mr. Grier's claim under § 1981 requires proof of intentional discrimination. *General Building Contractors Ass'n., Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); *Washing-*

*ton v. Davis*, 426 U.S. 229, 246–48, 96 S.Ct. 2040, 2050–51, 48 L.Ed.2d 597 (1976); *Baldwin v. Birmingham Bd. of Educ.*, 648 F.2d 950, 954 (5th Cir.1981).[9] The court recognizes that the test for intentional discrimination in suits under § 1981 is the same as the framework used in Title VII discriminatory treatment cases. *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 656–57 (11th Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 69, 130 L.Ed.2d 24 (1994); *Brown v. American Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 185–87, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989)). Since the Title VII and § 1981 are inextricably intertwined, the court will not conduct a separate analysis of the § 1981 claim. Therefore, based on the above Title VII analysis, the court finds that Mr. Grier has failed to establish a prima facie case of a § 1981 violation.

## CONCLUSION

In sum, the court concludes that Mr. Grier was terminated because of misrepresentations about his "felony" conviction based upon the information received by Partek and that race played no role whatsoever in that decision. Further, Mr. Grier has presented no evidence that he suffered racial discrimination in other aspects of his employment such as "discipline, promotions, job assignments, pay, transfers, notice of job opportunities, training, receipt of overtime, scheduling, and other terms, conditions, and privileges of employment."

Accordingly, it is CONSIDERED and ORDERED that the defendant's motion for summary judgment be and the same is hereby GRANTED.

---

**8.** The court notes that suits for racial discrimination predicated on § 1981 will continue to be favored over Title VII. Compensation for compensatory and punitive damages is not capped if the employee-plaintiff circumvents Title VII's administrative mechanisms, which encourage reconciliation without a lawsuit. *See* 42 U.S.C. § 1981a(b)(3), which caps damages available under Title VII from $50,000 to $300,000, depending upon the size of the employer's workforce; *See also id.* at (b)(4), which specifically states that

"[n]othing in this section shall be construed to limit the scope of, or the relief available under [§ 1981]."

**9.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

It is further CONSIDERED and ORDERED that all costs herein incurred be and the same are hereby taxed against the plaintiff, for which let execution issue.