Annie CRUMPTON, Plaintiff,

v.

ST. VINCENT'S HOSPITAL, Defendant.

No. CV96–H–995–S.

United States District Court,
N.D. Alabama,
Southern Division.

April 1, 1997.

Carl S. Pittman, Gardberg & Knopf, Montgomery, AL, for plaintiff.

Lyman H. Harris, Harris, Cleckler, Berg, Morris, Rogers & Hollis, Birmingham, AL, Roger K. Quillen, F. Kytle Frye, Howard B. Jackson, Fisher & Phillips, Atlanta, GA, for defendant.

## MEMORANDUM OF DECISION AND ORDER

HANCOCK, Senior District Judge.

The court has before it defendant's motion for summary judgment filed February 6, 1997. In accordance with the court's February 7, 1997 order, the motion was deemed submitted, without oral argument, to the court for decision as of March 7, 1997.

Defendant filed its brief in support of the motion for summary judgment on February 7, 1997, along with its evidentiary submission [1]. Then on February 14, 1997 defendant supplemented its evidentiary submissions with an updated chart of pay ranges for different salary grade positions at St. Vincent's Hospital ("St.Vincent's"). Plaintiff

---

1. Defendant's evidentiary submission includes various records, notes, policies, statements and reports, the EEOC charge, and affidavits of plaintiff, Renee Tucker, Marty Box, Susan Hubbard, and Diane Bridgewater as well as excerpts from the deposition of plaintiff.

filed her evidentiary submission in opposition to the motion on February 28, 1997 and then filed a brief in opposition to the motion on March 7, 1997.[2] On March 20, 1997 defendant filed a motion for leave to file a reply brief. Defendant's motion for leave to file the reply brief is GRANTED.

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff commenced this action by filing a complaint on April 18, 1996 alleging that defendant discriminated against her based on her disability and her race in violation of the Americans With Disabilities Act, (42 U.S.C. § 12101 et seq.), Title VII (42 U.S.C. § 2000e et seq.) and 42 U.S.C. § 1981. In the complaint, plaintiff asserts that defendant failed to provide reasonable accommodations for her disability. Plaintiff also alleges that defendant discriminated against her based on race and retaliated against her due to her opposition to racial harassment by denying her a pay raise.

According to plaintiff, in March 1995, everyone in St. Vincent's kitchen area received a pay increase except her. See Plaintiff's EEOC Affidavit, Exhibit 20 of Defendant's Evid. Sub. Plaintiff asserts that she was unlawfully denied a pay increase, while Gaye Estes, a white employee on light duty who worked in the kitchen area, received a pay increase in March of 1995. Id.; Crumpton depo. at 42. Plaintiff claims she was discriminated against when she did not receive a pay increase in March 1995, July 1995, and October 1995. Id. at 259.

During her deposition, plaintiff testified that she was discriminated against after her November 1993 injury, when she was required to return to work in the kitchen on December 30, 1993, rather than working in the linen room. See Crumpton depo. at 39–40. Crumpton felt that it was too early for her to return to the kitchen and considered this to be racial discrimination because Estes was not required to return to such work in the kitchen area after her knee surgery for torn ligaments and carpal tunnel surgery on one hand. Id. at 40, 42.

Plaintiff also asserts that she was not reasonably accommodated after her injury and surgery when transferred from the cook position to the dietary assistant position because the transfer was a demotion which prevented plaintiff from receiving any future wage increases or bonuses. According to plaintiff, St. Vincent's failed to make an effort to locate and offer her a transfer that would not result in a demotion. Plaintiff believes that defendant should have placed her on a light duty job out of the kitchen, in some job other than dietary assistant. See Crumpton depo. at 74. Plaintiff suggests that she should have been given a light duty job allowing sitting down, like the job given to Estes. Id.

### B. Underlying Facts

Plaintiff Annie J. Crumpton is a black female who was first employed by St. Vincent's on October 7, 1990. See Plaintiff's Affidavit to EEOC, Exh. 20 of Defendant's Evid. Sub. In November of 1993, plaintiff suffered an on-the-job injury to her left shoulder and wrist. Id. According to plaintiff she was informed that she had carpal tunnel syndrome in both hands. Id. Plaintiff returned to work on light duty prior to her surgery. On February 9, 1994 plaintiff underwent surgery on her left shoulder and left wrist as a result of the injuries.[3] See EEOC Charge; Crumpton depo. at 50.

Before plaintiff was injured in 1993, she worked as a cook in the dietary department of St. Vincent's. Plaintiff returned to work on light duty March 1, 1994 in the cook area, but with limitations. See Crumpton depo. at 50, 73; Exh. 3 of Defendant's Evid. Sub. With these restrictions, plaintiff was not able to perform the duties of the cook. See Crumpton depo. at 74. Dr. Johnson, plaintiff's personal physician, notified St. Vincent's

---

2. Plaintiff's evidentiary submission included defendant's answers to interrogatories, policies, statements, notes, memos and the affidavits of Edna Williams and Alberta Lee, along with excerpts from the deposition of Linda Pickard.

3. Plaintiff indicates in her affidavit that in April of 1995 she had a second surgery to assist with her pain. See Plaintiff's Affidavit to EEOC, Exh. 20 of Defendant's Evid. Sub.

third-party administrator for worker's compensation claims that he had permanently restricted plaintiff "to limit her lifting to 15 pounds from waist to eye and 25 pounds from floor to waist. no overhead use of left arm and no repetitive or strenuous use of the left hand." *See* June 24, 1994 letter from Dr. Johnson, Exh. 1 of Defendant's Evid. Sub.; EEOC Charge; Crumpton depo. at 74.

After learning about Dr. Johnson's restrictions on plaintiff's activities, St. Vincent's sent plaintiff to have an ergonomic evaluation of her physical capabilities. *See* Exh. 2 of Defendant's Evid. Sub. Considering the results of the tests performed, the evaluator determined that based on the job description for a cook, plaintiff's abilities did not match her job requirements. *Id.* Crumpton's supervisor, Diane Bridgewater, suggested to Michael Ballew, in the Employment Department, that a dietary assistant/tray line position be modified and plaintiff be transferred to that position. See Exh.3 of Defendant's Evid. Sub.

St. Vincent's offered Crumpton a transfer to a dietary assistant/tray line position and she accepted the transfer. *See* Crumpton depo. at 159–60. On July 31, 1994, St. Vincent's transferred Crumpton to a dietary assistant position on the tray line with no change in her pay. *Id.* at 72–73; Exh.6 of Defendant's Evid. Sub.

Plaintiff then worked in a tray line position sorting silverware, preparing late food trays, and working on the beverage line and hot food line. *See* Plaintiff's Affidavit. Crumpton continued to complain that her duties as a dietary assistant were too strenuous. St. Vincent's had a physical therapist visit Crumpton's work site to weigh objects to ensure they were within her restrictions and to suggest ways of performing her tasks. See Exh. 4 of Defendant's Evid. Sub. None of the items weighed exceeded plaintiff's lifting limitations. *Id.* Then in October of 1994, St. Vincent's had Crumpton's physical capacity re-evaluated at the Occupational Safety, Ergonomics and Functional Testing Services.

*See* Exh. 5 of Defendant's Evid. Sub. The evaluation concluded that plaintiff "demonstrated the capacities to perform the job duties of . . . [the] Tray line job as specified in the description of duties which includes lifting and carrying requirements of 25 pounds." *Id.* at 367–68.

On January 6, 1994, Crumpton received an increase in her wages from $7.38 per hour to $7.60 per hour, based on the recommendation of her supervisor contained in her annual evaluation. *See* Defendant's Response to Interrogatory No. 7, Exh. 2 of Plaintiff's Evid. Sub. This was the last pay increase that Crumpton received during her employment with St. Vincent's. *Id.* Crumpton admits that at $7.60 per hour she was receiving wages above the maximum pay level for the dietary assistant job. *See* Crumpton depo. at 160.[4]

In late February of 1995, St. Vincent's implemented a market adjustment for several positions, including dietary assistant. *See* Hubbard Affidavit, Exh. 18 of Plaintiff's Evid. Sub. A "market adjustment" occurs when St. Vincent's changes the wage rates for employees in a certain position in order to assure that their wages are competitive with that of other employers. *Id.* At the time of the market adjustment in February of 1995, Crumpton was the only employee in the dietary department who was receiving a wage rate that was above the maximum for the position occupied. *Id.* Plaintiff asserts she was denied increases in pay in March of 1995 and July of 1995 as well as a bonus in October of 1995. *See* Crumpton depo. at 259. Plaintiff neither complained to management about not receiving a pay increase nor asked for an explanation as to why she did not receive a pay increase or bonus on these occasions. *Id.* at 307–08.

In April of 1996, the dietary assistant position was changed to require a schedule of seven days on, seven days off, with eleven hour shifts. *Id.* at 222; Tucker Affidavit. Plaintiff testified that she tried to work the new shift, but could not. *Id.* at 223. Plain-

---

**4.** According to the documents submitted by defendant, the pay range of the dietary assistant was between $5.00 and $7.00 per hour in February of 1994. *See* Exh. 7 of Defendant's Evid. Sub. At some time around March of 1995, the pay range was adjusted to $5.20 to $7.28 per hour. *See* Exh. 23 of Defendant's Evid. Sub.

tiff was placed on alternative duty on May 15, 1996 based on her restrictions including: limited use of her right arm, no lifting over two pounds and no pushing or pulling of over two pounds. *See* Exs. 17 & 18 of Plaintiff's Evid. Sub. In June of 1996, Dr. Hall, plaintiff's personal physician, wrote a note restricting plaintiff to working eight hours a day for five days each week. *Id.* at 219, 222; Exh. to Tucker Affidavit; Exh. 19 of Plaintiff's Evid. Sub. St. Vincent's treated the note from Dr. Hall as a request for light duty status. *See* Tucker Affidavit. St. Vincent's denied this request and stated that allowing Crumpton to work this modified schedule would require St. Vincent's to hire replacement or additional staff members in order to maintain regular departmental functioning. *See* Exhibit to Tucker Affidavit.

According to plaintiff, Ms. Pickard, Personnel Health Manager, told plaintiff that St. Vincent's would not accept her doctor's excuse, but would offer her to work a twelve hour shift three days and being off four, and four days working a twelve hour shift and then being off three. *Id.* at 220; Pickard depo. at 13, Exh. 1 of Plaintiff's Evid. Sub. Renee Tucker, a manager of the dietary department, stated that she talked with Crumpton on July 2, 1996 by telephone and informed her that the dietary department was planning to offer her a schedule of two days on, two days off, three days on, three days off; etc. in order to allow her to work. *See* Tucker Affidavit at ¶ 8, Exh. 9 of Defendant's Evid. Sub.; Exh. 20 of Plaintiff's Evid. Sub. According to Tucker, Crumpton asked about the length of the shift and was told that the work days would still involve an 11 or 12 hour shift. *Id.* Tucker explained to Crumpton that she could take any sick and vacation time she had accumulated while working on the alternative schedule. *Id.*

After being transferred to the position of dietary assistant in July of 1994, plaintiff never requested a transfer or applied for a transfer. *Id.* at 258. On August 18, 1995, plaintiff filed a charge with the EEOC alleging the she was discriminated against based on her race and disability and this discrimination had occurred on March 23, 1995. *See* Exh. 10 of Defendant's Evid. Sub. In January of 1996, the EEOC sent a letter to plaintiff and the attorney for defendant indicating that based on its investigation the raise in pay provided to other employees was not a cost of living increase, but a market wage adjustment, and plaintiff was not entitled to an increase because she earned over the maximum wage for her position. *See* Exh. 11 of Defendant's Evid. Sub. *Id.* The EEOC also stated that "[non]Blacks and non-disabled employees also were affected in that they also did not receive a wage increase due to their maximum pay scale." *Id.* At that time the EEOC concluded that further investigation would not likely result in a finding of a violation of the statutes in question. *Id.* Therefore, the EEOC issued a right to sue letter to plaintiff at that time. *Id.*

Plaintiff began working at a Nazarene daycare center in late August or early September of 1996. *See* Crumpton depo. at 212. She prepared food for the children. *Id.* at 214. Her pay rate was six dollars and twenty-five cents per hour. *Id.* at 213. Plaintiff worked between thirty-five and forty hours a week, in shifts of seven or eight hours each day. *Id.* at 212–13. According to plaintiff, the regular cook was to be returning in January of 1997 and she was just filling in. *Id.* at 216. Plaintiff was able to perform her duties as a cook at the daycare center. *Id.* at 217.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once the moving party has met his burden, Rule 56(e) requires the non-

1111

moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249, 106 S.Ct. at 2510–11.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick,* 2 F.3d at 1115–17 (citing *United States v. Four Parcels of Real Property,* 941 F.2d 1428 (11th Cir.1991) (*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick,* 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to *affirmatively* show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick,* 2 F.3d at 1115–16. If the movant meets its initial burden by using this second method, the nonmoving party may either point out supporting evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey,* —— U.S. ——, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

## B. Americans With Disabilities Act Claims

The Americans With Disabilities Act ("ADA") prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to ... procedures, the hiring, advancement or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Additionally, under the ADA an employer discriminates against an individual with a disability by not making reasonable accommodations for the known physical or mental limitation on an otherwise qualified individual's ability to perform the job, unless the reasonable accommodation would cause undue hardship. *Harris v. H & W Contracting Co.,* 102 F.3d 516, 519 (11th Cir.1996); 42 U.S.C. § 12112(b)(5)(A).

"In order to establish a prima facie case of discrimination in violation of the ADA, the plaintiff must prove that (1) she has a disability; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability." *Morisky v. Broward Co.,* 80 F.3d 445, 447 (11th Cir.1996).[5]

### 1. *Is Plaintiff Disabled Under the ADA?*

In her complaint, plaintiff asserts that she is disabled by her carpal tunnel syndrome and tendinitis. *See* Complaint at ¶ 8. Pursuant to the ADA, a disability is defined to include:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). There has been no evidence submitted as to any other physical or mental impairments nor any indication that plaintiff would qualify as "disabled" under the second or third prong of the definition.

Assuming that plaintiff's carpal tunnel syndrome and tendinitis qualify as physical impairments, as defined by the ADA[6], plaintiff must still provide evidence that creates a factual dispute as to whether or not the impairments substantially limit a major life activity. *Gordon v. E.L. Hamm & Assoc.,* 100 F.3d 907, 911. The term "major life activity" has been defined by the EEOC to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *see also*

*Gordon v. E.L. Hamm & Assoc.,* 100 F.3d 907, 911 (11th Cir.1996).

During her deposition, plaintiff testified that she can walk, talk, see, hear and care for herself. *See* Crumpton depo. at 21–22. The only major life activity that plaintiff asserts is substantially limited by her physical impairments is her ability to work. The EEOC regulations for the ADA defines "substantially limited" as "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii).

Therefore, to prove that she is disabled, plaintiff must show that her impairments substantially restrict her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *Pritchard v. Southern Company Services,* 92 F.3d 1130, 1133 (11th Cir.1996); 29 C.F.R. § 1630.2(j)(3)(i). "An impairment does not substantially limit the ability to work merely because it prevents a person from performing 'either a particular specialized job or a narrow range of jobs' ... Nor does the 'inability to perform a single, particular job ... constitute a substantial limitation in the major life activity of working.'" *Pritchard,* 92 F.3d at 1133 (quoting 29 C.F.R. § 1630.2(j)(3)(i) and citing to the § 1630.2(j)App.).

Plaintiff asserts that she is unable to perform any institutional cook jobs because these jobs would involve heavy lifting and

---

5. A plaintiff in an ADA case must demonstrate that the employer had either actual or constructive knowledge of the disability or considered the employee to be disabled. *Gordon v. E.L. Hamm & Assoc.,* 100 F.3d 907, 910 (11th Cir.1996). In this case, plaintiff was injured on the job and placed on restricted duties following her injuries. Therefore, there appears to be no dispute that St. Vincent's had knowledge of plaintiff's problems with her shoulder and wrists.

6. The EEOC regulations define a "physical or mental impairment" as:

(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory ... cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specified learning disabilities.

29 C.F.R. § 1630.2(h).

carrying requirements like the cook position at St. Vincent's. *See* Crumpton depo. at 218. According to plaintiff, she has the training and expertise to be an institutional cook and these jobs are part of a broad range of jobs that she is unable to perform due to heavy lifting requirements.

Defendant argues that plaintiff has failed to present evidence that her physical impairments substantially limit her from a broad range of jobs. According to defendant, while it is clear that plaintiff is unable to perform the specific job she previously held as a cook at St. Vincent's, she is not substantially limited from performing a broad range of jobs. In support of this argument, defendant points to the fact that even with her permanent restrictions, plaintiff was able to perform the job of dietary assistant according to an ergonomic evaluation and based on her performance in that position for several months. *See* Exhs. 2 and 5 of the Defendant's Evid. Sub. Additionally, based on plaintiff's own testimony, she was able to perform the duties of a cook at a Nazarene day-care center for several months, despite her permanent physical restrictions. *See* Crumpton depo. at 212–13.

Defendant also points out that courts, including the Eleventh Circuit, have recognized the additional factors set forth in the EEOC regulations for use in determining if an individual is substantially limited in the major life activity of working. These factors are as follows:

(1) the geographic area to which the individual has reasonable access;

(2) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment; and

(3) the job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills, or abilities, within that geographical region, from which the individual is also disqualified because of the impairment.

29 C.F.R. § 1630.2(j)(3)(ii); *Gordon v. E.L. Hamm & Associates*, 100 F.3d 907, 912 (11th Cir.1996); *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1133 (11th Cir.1996); *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 943–44 (10th Cir.1994). St. Vincent's argues that plaintiff has failed to present factual evidence creating a material dispute as to these issues.

Upon review of the record, the only evidence that appears to support plaintiff's contention that she is substantially limited from a broad range of jobs, is her own deposition testimony. Based on her personal experience, plaintiff testified that all institutional cook jobs would involve lifting and carrying objects weighing more than her restrictions allow. *See* Crumpton depo. at 218. Plaintiff appears to be relying on her experience when working as a cook in the kitchen at Medical Center East. *Id.* However, it is undisputed that the amount of heavy lifting varies between institutional cooking jobs, based on plaintiff's admission that there was less heavy lifting required as part of her job at Medical Center East than that involved in her job at St. Vincent's. *Id.*

Plaintiff presented no evidence indicating how many institutional cooking jobs are available in the relevant geographic area nor any objective information, such as job descriptions, indicating the amount of heavy lifting required in any such positions other than at St. Vincent's. Defendant has presented evidence that plaintiff is capable of performing other similar jobs, like that of dietary assistant and cook for the day-care center. Plaintiff has failed to present evidence that would create a factual dispute as to whether these jobs are within the same class or range of jobs as her job as a cook at St. Vincent's. In her brief, plaintiff simply argues that it is "not realistic or reasonable" to compare these jobs with plaintiff's former job as a cook at St. Vincent's based on the job description of her former job and plaintiff's deposition testimony.

In this case plaintiff has failed to provide a job description of either similar or dissimilar cooking positions or testimony as to the particular requirements of other positions which is necessary for this court to conclude what

available jobs are within the same class or broad range as her former position. In *Bolton v. Scrivner*, 36 F.3d 939 (10th Cir.1994), the Tenth Circuit affirmed the district court's decision to grant summary judgment on these same grounds. In the *Bolton* case, the plaintiff failed to present evidence addressing the relevant geographic area, as well as the number and types of job demanding similar training for which plaintiff was disqualified. 36 F.3d at 944. Based on the evidence submitted, there is no dispute that plaintiff was able to perform the job of cook for a day-care center. Although plaintiff asserts that her duties in that job were different from the duties of the broad range of jobs referred to as "institutional cook" positions that she was trained to hold, she has presented no evidence supporting her claim that a number of institutional cook positions would necessarily involve heavy lifting requirements.

Furthermore, the presence of limitations preventing a person from performing heavy lifting or repetitive movements have been determined to be insufficient alone to establish any substantial limitation due to an impairment. *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir.1995); *Ray v. Glidden* Co., 85 F.3d 227, 229 (5th Cir.1996). In the absence of evidence creating a factual dispute as to whether plaintiff is substantially limited from performing a class of jobs or broad range of jobs, plaintiff has failed to present substantial evidence that she is disabled, as defined by the ADA.

### 2. Were Reasonable Accommodations Provided?

■ Alternatively, even assuming arguendo, that plaintiff had presented evidence to create an issue of fact as to whether she is disabled, St. Vincent's has attempted to accommodate plaintiff's disability by transferring her to the position of dietary assistant, which was modified to involve only duties within her restrictions. See Exs. 2,3,4 & 5 of Defendant's Evid. Sub. Plaintiff asserts that

this accommodation was not reasonable because it prevented her from receiving future pay increases and was not the same type of accommodation as provided to a white employee, Gaye Estes.

When complying with the ADA's requirement of providing reasonable accommodations, the employer does not have to provide plaintiff with the accommodations that plaintiff requested or prefers.[7] *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996); 29 C.F.R. § 1630.9 (Appendix). "The accommodation ... does not have to be the 'best' accommodation possible, as long as it is sufficient to meet the job-related needs of the individual being accommodated." 29 C.F.R. § 1630.9, Appendix.

The Eleventh Circuit has recognized that the EEOC's interpretation of the ADA should be given considerable weight if there is no direct conflict between the interpretation and the language of the statute. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 521 (11th Cir.1996). The following discussion of reassignment to a vacant position as a reasonable accommodation is included in the EEOC interpretive guidance:

> Reassignment to a vacant position is also listed as a potential reasonable accommodation. In general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship ...
>
> ... Employers should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time. A "reasonable amount of time" should be determined in light of the totality of the circumstances.
>
> An employer *may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qual-*

---

7. The fact that St. Vincent's suspected that plaintiff would not find the move to dietary assistant desirable, prior to proposing the transfer is immaterial. *See* Exh.3 of Defendant's Evid. Sub. Likewise, the fact that plaintiff accepted the transfer because it was the only option she was

given is immaterial, since plaintiff has not come forward with any substantial evidence that the provided accommodations did not allow plaintiff to perform the essential functions of the job or were otherwise unreasonable; i.e. evidence of other available positions.

*ified with or without reasonable accommodation. An employer. however, is not required to maintain the reassigned individual with a disability at the salary of the higher grade position if it does not so maintain reassigned employees who are not disabled.*

29 C.F.R. § 1630.2(o) Appendix. The court sees no direct conflict between this interpretation of the statute and the actual language of the statute. The reassignment of an employee to a vacant light-duty or vacant permanent position for which the employee is qualified has been held to be a reasonable accommodation under the ADA. *Howell v. Michelin Tire Corp.,* 860 F.Supp. 1488, 1492 (M.D.Ala.1994). Plaintiff made general allegations in her brief that defendant did not make the necessary effort to locate and offer her a transfer that would not result in a demotion. However, plaintiff has presented no evidence indicating there were other positions at St. Vincent's that she was qualified to perform which were vacant or would have become vacant within a reasonable amount of time. Furthermore, plaintiff never requested a transfer from the dietary assistant position or applied for any available transfers. *See* Crumpton depo. at 258.

▆ The EEOC's interpretation of "reasonable accommodations" clearly allows the reassignment of an individual to a lower graded position without maintaining the salary of the high graded position. The court concludes that the fact that the reassignment provided to plaintiff as an accommodation could be considered a "demotion" and did not allow plaintiff to be eligible for future pay increases would not render the accommodation unreasonable. Plaintiff suffered no loss in pay and was undisputably paid more than similarly situated nondisabled employees. While the court is not willing to say that a demotion to a vacant position which prevents pay increases in the immediate future would be a *per se* reasonable accommodation in every case, based on the undisputed facts of this case and the evidence presented, the

court is convinced that in this case the demotion was a reasonable accommodation.

▆ Plaintiff's argument that her accommodations were unreasonable because they were not the same as those provided to Estes likewise fails. As the Tenth Circuit pointed out in *Myers v. Hose,* 50 F.3d 278, 284 (4th Cir.1995), plaintiff's claim of disparate treatment is flawed by the fact that the person she seeks to compare herself with is a member of the same purported protected class, a disabled individual. The fact that an employer had offered certain accommodations to some employees as a matter of good faith does not mean that the same accommodations must be extended to plaintiff as a matter of law. *Myers,* 50 F.3d at 284; see also *Traynor v. Turnage,* 485 U.S. 535, 549, 108 S.Ct. 1372, 1382, 99 L.Ed.2d 618 (1988) ("There is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons.").

Furthermore, defendant has presented evidence demonstrating that the reason Mrs. Estes's accommodations differed from those provided to plaintiff was based on the fact that Estes had restrictions from prolonged walking or standing. *See* Exh. 16 of Defendant's Evid. Sub. (Estes's Return to Work Slip). Plaintiff had no restriction involving prolonged walking or standing. .See= Exh. 2 of Defendant's Evid. Sub. at 000357. Plaintiff has presented no evidence indicating that there was no difference in the physical restrictions of plaintiff and Estes and no evidence indicating that the choice of accommodations was pretextual for any type of discriminatory motive. Therefore, the court concludes that there is no evidence supporting plaintiff's claim that the difference in the accommodations was based on discrimination against her based on her disability and defendant is entitled to summary judgment in its favor as plaintiff's reasonable accommodation claim.[8]

---

**8.** In the EEOC charge, plaintiff only alleged race discrimination in connection with her failure to receive a pay increase. Exh. 10 of Defendant's Evid. Sub. While the court doubts that a claim of race disparate treatment based on accommoda-

tions for a disability is actionable, the court concludes that in this case such a claim is outside the scope of the EEOC charge and not actionable under 42 U.S.C. § 1981. However, to the extent such a claim exists and to the extent it can be

### 3. *Was Plaintiff's Failure to Receive Pay Increases oR Bonuses; Because of Her Disability?*

It is undisputed that plaintiff did not receive any type of wage increase after January of 1994. *See* Exh. 2 of Plaintiff's Evid. Sub. at No. 7. Plaintiff argues in her brief that the essence of her claim as to the denial of a pay increase is that St. Vincent's discriminated against plaintiff in denying her a pay increase by giving her no choice for continued employment other than the position of dietary assistant, which they knew would result in a decreased earning capability.[9] However, based on the court's conclusion above that the demotion was a reasonable accommodation, there can be no actionable claim of discrimination as to pay based solely on the offering of that position as an accommodation.

Defendant does not argue that plaintiff has failed to make out a prima facie case [10], other than its earlier argument that plaintiff is not disabled. Rather, based on the apparent strength of the proffered non-discriminatory reasons for its actions, defendant only challenges plaintiff's ability to present substantial evidence that either the proffered reason is false or on the ultimate issue that defendant's actions were motivated by disability, race or retaliation. *See Combs v. Plantation Patterns,* 106 F.3d 1519 (11th Cir.1997).

Defendant asserts that the legitimate non-discriminatory reason for its refusal to provide plaintiff a pay increase in March of 1995 was based on the fact that St. Vincent's simply provided a market adjustment increase for the dietary assistant position and she was ineligible for a market adjustment increase due to the fact that she was earning $7.60 per hour, which was more than the established or revised pay range.

Plaintiff does not dispute that she was being paid more than the maximum rate in the pay range for the dietary assistant position. *See* Crumpton depo. at 160. Defendant has presented the affidavit of Susan Hubbard, a wage and salary coordinator for St. Vincent's, stating that the market adjustment occurred in late February of 1995 and plaintiff was the only associate in the dietary department who was receiving a wage rate above the maximum for the position occupied. *See* Exh. 18 of Defendant's Evid. Sub. Defendant has presented a legitimate reason why plaintiff was not given a pay increase when all other members of the dietary department received an increase.

St. Vincent's policy on salary provides that when a person is moved to a lower graded job "[i]n some instances, the current pay will be retained as the rate of pay for the new position even if it is above the maximum of the assigned pay grade." *See* Exh. 8 of Defendant's Evid. Sub. In such instances it provides that "[n]o future increases to pay may occur until [the] market places the current pay below the maximum of the assigned pay grade." [11] *Id.*

argued to be like or related to the claims embraced in the EEOC charge, this race claim would fail for the same reasons set forth above. Defendant has articulated a legitimate non-discriminatory reason for disparate treatment based on the physical limitations suggested in the two cases and plaintiff has failed to present any evidence indicating that the difference in treatment was a pretext for race discrimination or that the proffered reasons are false.

9. In her affidavit to the EEOC, plaintiff states she was told by her supervisor, Diane Bridgewater, that she would not get the pay increase because she was on light duty. *See* Exh. 20 of Defendant's Evid. Sub. Plaintiff has not asserted that this statement constitutes "direct evidence" of disability discrimination and therefore the court does not address whether or not it would constitute direct evidence. Furthermore, plaintiff makes no mention of the statement in her brief and testified to the contrary during her deposi-

tion by stating that she never asked Bridgewater for an explanation of why she did not receive a pay raise. *See* Crumpton depo. at 308.

10. The court has serious questions as to whether plaintiff could make out a prima facie case for either disability discrimination or race discrimination based on the questionable characterization of asserted adverse employment actions she suffered.

11. Plaintiff relies on another portion of St. Vincent's policy on salary which provides that when returning to work in a new job because of disability from a worker's compensation injury the human resource department will recommend the pay rate based on qualifications, with some consideration being given to the pay rate in the prior job. *See* Plaintiff's Brief at p. 7. While this portion of the policy may apply to plaintiff's circumstances, it does not negate the applicabili-

Defendant has presented evidence demonstrating that nondisabled employees were treated similarly in that they were not given any pay increase during the March, 1995 market adjustment for their jobs because they were paid more than the maximum for the appropriate pay range. *See* Isbell Affidavit; Grubbs Affidavit.

Plaintiff also asserts in her deposition that she should have received "a piece of the PIE" bonus in October of 1995 and the two percent raise in July of 1995. *See* Crumpton depo. at 259. According to Marty Box, Compensation and Support Manager, St. Vincent's PIE annual bonus payments are determined by, among other things, performance evaluations given in June. *See* Box Affidavit, Exh. 14 to Defendant's Evid. Sub. Apparently the pay increases available in July of 1995 resulted from the employees' annual evaluations and goal evaluations provided in June, 1995. *See* Bridgewater Affidavit, Exh. 21 of Defendant's Evid. Sub. According to Box, even though the evaluations were provided in June of 1995, the PIE bonus payments were not distributed until the Fall of that year. See Box Affidavit, Exh. 14 of Defendant's Evid. Sub.

As above, defendant asserts that plaintiff was ineligible for any increase in pay due to the fact her current pay was above the range for her job. Defendant has presented evidence indicating that black employees[12] in the dietary department at St. Vincent's who were on "light and/or alternative duty status" received pay increases and the PIE bonus payment in 1995. *See* Bridgewater Affidavit. Plaintiff has presented no evidence that the proffered reason was false and there is insufficient evidence to raise a material issue of fact that race was a motivating factor in St. Vincent's failure to increase plaintiff's pay on any of the three occasions.

Neither the EEOC charge nor the complaint assert any claim of disability discrimination, other than failure to provide reasonable accommodations and failure to provide a pay increase. However, in her brief plaintiff tries to create a new claim based on some type of disparate treatment as to the terms and conditions of her employment or a disability harassment claim. Co-worker Alberta Lee states in her affidavit that she "observed the management being more critical of Annie Crumpton than other non-disabled or limited duty employees. The management spent more time and effort making her work and watching her than they did with other non-disabled or non-limited employees."[13] See Exh. 23 of Plaintiff's Evid. Sub. The only two incidents explained by Lee in her affidavit are: (1) that she saw plaintiff drop some silverware, have difficulty picking it up, and when Lee went to assist plaintiff Lee was told by management not to help plaintiff; and (2) that she knows sit down work like that given to Estes, was available in the kitchen but not given to plaintiff. *Id.*

A claim of this type has not been presented in this case. Even assuming plaintiff has somehow presented such a claim, plaintiff has not provided sufficient evidence to create a factual dispute as to any adverse employment action she suffered as a result of disparate treatment concerning any terms and conditions of employment between disabled and non-disabled employees. The general conclusion in Lee's affidavit that there was a difference is insufficient. "These general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment upon a court's determination that no genuine issues for trial exists." *Resolution Trust Corp. v. Dunmar Corp.*, 43

---

ty of the portion of the policy limiting pay increases to where the present salary is within the pay range. Obviously plaintiff was benefited by this provision in that consideration was given to her former salary and she continued to receive that salary despite the fact it was outside the pay range for her new position as dietary assistant.

12. Bridgewater's affidavit specifically names six employees who received such pay increases.

13. The Affidavit of Edna Williams generally asserts that employees with disabilities were treated differently and states that management did not go to the same effort to accommodate for plaintiff as they had with Estes. *See* Exh. 22, Defendant's Evid. Sub.

F.3d 587, 593 (11th Cir.1995) (other citation omitted). The incident involving prohibiting help with silverware is also insufficient to support a claim in that it fails to demonstrate an adverse employment decision and does not demonstrate an effect on a term or condition of employment or pervasive harassment as required to demonstrate a hostile work environment. *See Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir.1995). Lastly, the comparison of the accommodations provided to plaintiff and Estes does not support a disparate treatment claim for the reasons set forth above.

## C. Race Discrimination Claims

In her EEOC charge and in Count II of the complaint plaintiff asserts that St. Vincent's violated Title VII and 42 U.S.C. § 1981 by discriminating against her when denying her an increase in pay based on her race. As explained above, St. Vincent's has asserted that its legitimate non-discriminatory reason for not providing plaintiff with an increase in her pay rate in March of 1995 or July of 1995 and a bonus in October of 1995 was its compliance with an existing policy of providing no increase when an individual's present salary is above the maximum pay range for the position occupied. See Exh. 8 of Defendant's Evid. Sub.

Plaintiff looked to a white employee, Gaye Estes, as a comparator. However, the evidence submitted establishes that Estes' pay rate of $5.41 per hour was well below the maximum for the position held of $7.00 at that time, and thereby well below the rate of pay earned by plaintiff. *See* Exs. 7 & 19 of Defendant's Evid. Sub. Therefore, the policy determining the availability of a pay increase based on one's current pay being within the pay range for the position occupied is consistent with providing Estes a pay raise when none was provided to plaintiff.

Defendant has presented affidavits from other white employees establishing that they did not receive a pay increase in late February of 1995 because their present wage rate was above the maximum wage provided for the position. *See* Exh. 17 of Defendant's Evid. Sub. Plaintiff concedes that other black employees were provided an increase in their pay rate in late February or March of 1995. *See* Crumpton depo. at 150–52; *See also* Bridgewater Affidavit. Therefore, plaintiff has failed to present sufficient evidence to meet her burden of showing either that the proffered reasons for the action were false or that race was a motivating factor in denying the pay increase in March of 1995.

As to the other pay increase in July of 1995 and the bonus in October of 1995, plaintiff has presented no evidence to support her claim that the denial of the pay increase and bonus was based on her race. St. Vincent's presented evidence that six black employees of the dietary department were recommended for increases in pay and eligible for the PIE bonus payment based on the evaluations provided in June of 1995. *See* Bridgewater Affidavit, Exh. 21 of Defendant's Evid. Sub. The evidence submitted by the plaintiff indicates that out of the forty-one employees listed as being a dietary assistant, there are thirty-nine black employees and only two white employees. *See* Exh. 21 of Plaintiff's Evid. Sub. According to the chart, in 1995 eleven of these employees working as dietary assistants received a bonus, all of them being black. *Id.* Based on the foregoing, plaintiff has failed to create a material issue of fact as to whether race was a motivating factor in St. Vincent's refusal to give plaintiff a pay increase and/or bonus and has not presented sufficient evidence to create a factual dispute on the falsity of the proffered reason.

## D. Retaliation Claim

Plaintiff appears now to be arguing that she is asserting a claim for retaliation under Title VII, 42 U.S.C. § 1981 and the ADA. This court has recognized a claim for retaliation under 42 U.S.C. § 1981, based on *Pinkard v. Pullman–Standard*, 678 F.2d 1211, 1229 n. 15 (5th Cir. Unit B June 10, 1982) and § 1981(b) of the Civil Rights Act of 1991 reversing *Patterson v. McLean Credit*

*Union,* 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989).

■ "To establish a prima facie case of retaliation, the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relationship between the two events." *Meeks v. Computer Associates,* 15 F.3d 1013, 1021 (11th Cir.1994).

In Count II of the complaint, plaintiff alleges that she was denied a pay increase in retaliation for her complaints about racial harassment. During her deposition, plaintiff explained the only incident that she considered to be "racial harassment." *See* Crumpton depo. at 303–06. On November 27, 1994 plaintiff signed a "1995 Benefits Confirmation Statement" which indicated that "cash back" funds[14] were to be put in the Fidelity retirement program. *See* Box Affidavit & Exh.1, Exh. 22 of Defendant's Evid. Sub. The form also had a disclosure stating that the election could only be changed if plaintiff has a "significant change in family status" as defined by the Flex Choice Workbook. *Id.*

Plaintiff decided that she wanted to receive the "cash back" funds by way of a check rather than transferring them to the retirement account. *See* Crumpton depo. at 305–06. When St. Vincent's sent plaintiff's "cash back" funds to Fidelity, Fidelity rejected the deposit and told St. Vincent's that plaintiff had no account with Fidelity. *Id.* St. Vincent's, through Bridgewater, insisted that plaintiff fill out a Fidelity application because she had elected to have "cash back" funds deposited at Fidelity and her election was irrevocable absent special circumstances according to IRS regulations. *See* Box Affidavit, Exh. 22 of Defendant's Evid. Sub.

According to plaintiff, Ms. Bridgewater harassed her in that Bridgewater was "constantly after [her] every day about signing" a

form so that the cash back funds could be put in retirement. *See* Crumpton depo. at 303, 305. Plaintiff said that Bridgewater made her feel as if Crumpton had stolen the money. *Id.* at 305. After talking with Beth Moulin from St. Vincent's compensation department, plaintiff eventually signed the form on December 19, 1995. *See* Box Affidavit & Exh.3, Exh. 22 of Defendant's Evid. Sub.

Plaintiff admits that she complained to no one about the perceived racial harassment. *See* Crumpton depo. at 307. Based on the evidence submitted, plaintiff has failed to establish that her conduct qualifies as engaging in a statutorily protected activity. Simply complaining about a supervisor's conduct or refusing to comply with a request to sign a form does not constitute protected activity in this context. In order to be protected activity, plaintiff must present evidence showing that St. Vincent's management knew that her concern or complaints related in some way to race and a claim of being discriminated against on that basis. There has been no evidence presented that prior to the commencement of this action St. Vincent's had notice of the fact that plaintiff's initial refusal to sign the Fidelity retirement account form and her disagreement with putting the "cash back" funds in a retirement account rather than paying her directly was thought by plaintiff to be race discrimination or racial harassment in any way.

Furthermore, plaintiff has presented no evidence indicating that the incident with the form was not totally unrelated to her failure to get a pay raise or bonus. While it is clear that plaintiff's supervisor, and possibly other management officials, were aware of plaintiff's failure to sign the form concerning the distribution of her "cash back" benefits, there is no evidence that anyone in management knew that plaintiff considered the incident to be "racial" in nature, much less "racial harassment."

**14.** Employees of St. Vincent's who do not elect to maintain health insurance coverage through the hospital have the option of receiving the money that the hospital would have spent on their health insurance through a "cash back" program. See Box Affidavit, Exh. 22 of Defendant's Evid. Sub. The "cash back" money can either be received through a check made out to the employee or they can elect to have the funds deposited into a retirement investment account. *Id.*

Defendant also addresses plaintiff's allegations in paragraphs 7 and 8 of Count II in the complaint asserting that St. Vincent's "willfully ignored" her complaints about not receiving an increase in pay. In her deposition, plaintiff admits that she never complained to anyone in management at St. Vincent's or her supervisor about not receiving the pay increases. *See* Crumpton depo. at 307–08. In fact, plaintiff testified that she did not even ask her supervisor for an explanation of why she did not receive pay increases. *Id.* Therefore, plaintiff is unable to even point to a circumstance where management at St. Vincent's could arguable be characterized as willfully ignoring any complaints concerning her not receiving a pay increase which could support a claim for retaliation. Based on the foregoing, the court concludes that plaintiff has failed to make out a prima facie case of retaliation and defendants are entitled to summary judgment on the retaliation claims.

### E. New Claim By Plaintiff—Race Hostile Environment

▮ The court has addressed the legal issues embraced in the pleadings in this case. On May 13, 1996 the court ordered that the issues embraced by this litigation would be established by the pleadings as of 120 days from its commencement (October of 1996). Plaintiff's EEOC charge dealt only with having been denied an increase in pay based on her being on light work due to a disability and based on her race. Then in the complaint, plaintiff alleged a violation of the ADA based on defendant's purported failure to reasonably accommodate her, racial discrimination under Title VII and 42 U.S.C. § 1981 by failing to provide her an increase in compensation and retaliation for failure to provide an increase in compensation due to plaintiff's opposition to racial harassment.

▮ Only now, eleven months into this litigation, plaintiff for the first time in the brief in opposition to summary judgment seeks to add a claim [15] that she was subjected to disparate treatment based on her disability and her race when St. Vincent's management subjected plaintiff to a heightened degree of criticism and pressure concerning her work following her being placed on permanent restrictions, greater than that seen in the treatment of non-disabled employees and "a white employee under limitation." *See* Plaintiff's Brief at 3, 9 & Exs. 22 and 23 of Plaintiff's Evid. Sub. There is nothing in the EEOC charge or the complaint which could be characterized as like or related to the assertion of a "harassment" type of race discrimination claim based on criticism and oversight.

▮ Even assuming such a claim was properly presented to this court, the simple complaint of heightened criticism and pressure is not actionable as an "adverse employment action" absent a showing that it amounted to a hostile environment or that such criticism lead to an eventual termination or discipline. In order to prove a "hostile environment" based on race, plaintiff would have to present evidence of the pervasiveness of the conduct and that the conduct affected a term or condition of her employment. *Edwards v. Wallace Community College,* 49 F.3d 1517, 1521–22 (11th Cir.1995). Plaintiff has failed to present any such evidence. Likewise, plaintiff has presented no evidence indicating that this purported heightened criticism and pressure lead to a final adverse

---

**15.** In its brief St. Vincent's responds to a potential claim by plaintiff that defendant refused to accommodate her need to work eight hour shifts rather than eleven hour shifts in retaliation for her complaints about not receiving an increase in pay. Upon a thorough review of the complaint and plaintiff's brief, the court does not find this claim properly asserted in any filings by plaintiff's counsel and thereby does not believe this claim has been properly presented to the court in this action. However, even assuming that plaintiff has somehow bootstrapped this claim into the case, this claim is also proper for summary judgment in favor of defendant. Defendant has presented evidence indicating that its basis for denying plaintiff's request for a modified work schedule was that such an accommodation would require St. Vincent's to hire additional employees to maintain current operation levels, and plaintiff has presented no evidence indicating that the asserted need for more personnel is a pretext for retaliation nor any additional evidence indicating a retaliation motive.

employment decision, such as termination or disciplinary action.

The only evidence presented by plaintiff in support of,this nebulous race disparate treatment claim based on "criticism and pressure" is the affidavit of Edna Williams. Edna Williams asserts in her affidavit broad allegations that there were differences in the way management treated black employees, but does not elaborate on what these differences were. *See* Exh. 23 of Plaintiff's Evid. Sub.[16] The only factual information supporting these general claims relate to the accommodation of Gaye Estes in a sit down job outside the kitchen area following her surgery. *Id.* This claim has been addressed above and rejected as a legitimate or supported claim for disparate treatment based on race as to accommodations provided for disabilities.

### III. CONCLUSION

Upon a review of the evidence submitted and the briefs filed by the parties, this court concludes that defendant St. Vincent's Hospital is entitled to summary judgment in its favor on all claims by plaintiff. A separate order will be entered.

■ After dealing with the ill-defined and unsupported claims of plaintiff in this case, the court understands the frustration defendant has expressed in its earlier letters to counsel for plaintiff and in the motion for sanctions under Rule 11. Early into the discovery process it should have become apparent to plaintiff that defendant had a supportable legitimate non-discriminatory reason for denying plaintiff any pay increase based on the existing policy as to employees who earn more than the maximum pay for the position they occupy. Despite the fact that defendant was able to present white and non-disabled comparators who were treated similarly in connection with pay increases, as early as plaintiff's deposition, plaintiff persisted in expanding rather than limiting or dismissing this action.

Plaintiff was never subjected to a reduction in pay and earned quite a bit more per hour than any of her co-workers holding the same position. The evidence presented by the defendant indicates many efforts by St. Vincent's to properly assess plaintiff's physical limitations, to accommodate those limitations and allow plaintiff to continue her employment.

It appears that plaintiff has wasted the time of the defendant, the attorneys involved and the court by attempting to package her unhappiness with the accommodations provided in a variety to different claims. Then when provided evidence explaining defendant's reason for the refusal to provide a pay increase and other actions, plaintiff ignored the legitimate reasons provided and pursued this action, despite the fact she could provide no real evidence of a discriminatory motive of any type.

Defendant's February 18, 1997 motion for sanctions under Rule 11 will be deemed submitted to the court for decision on **May 5, 1997**. Defendant shall file a detailed listing of all expenses and attorney's fees it seeks to recover in connection with this motion and any additional supporting brief by **April 16, 1997**. Plaintiff shall file any brief or evidence opposing the awarding of sanctions in the amount requested by defendant by **April 30, 1997**. Defendant has until **May 5, 1997** to file a reply brief, if it deems a reply to plaintiff's opposition necessary.

---

**16.** The disparate treatment claims based on her disability and the accommodations provided have been addressed above.