[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 31, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13174
Non-Argument Calendar

_____

D. C. Docket No. 01-03040-CV-RWS-1

AJIBOLA LAOSEBIKAN,

Plaintiff-Appellant,

versus

COCA-COLA COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 31, 2006)**

Before TJOFLAT, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

This civil rights action has been brought under Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., and the Civil Rights Act of

1991, 42 U.S.C. § 1981, against the Coca-Cola Company ("Coca-Cola" or the

"Company") by a former employee, Ajibola Laosebikan ("Appellant"). He claims

that Coca-Cola discriminated against him on account of his race, black, on several

occasions. The district court found no merit in his claims of discrimination and

gave the Company summary judgment. Representing himself,[1] he now appeals.[2]

We affirm

## I.

Appellant contends that the evidence before the district court established (for

summary judgment purposes) several incidents of disparate treatment – in

particular, the Company's refusal to promote him to four different positions[3] and

its conduct of a 1994 job-performance evaluation. Appellant also contends that he

was subjected to a racially hostile work environment and that the Company's

---

[1] Appellant and his lawyers parted ways before the district court granted the Company's motion for summary judgment.

[2] In his brief, Appellant challenges (1) the entry of summary judgment, (2) the district court's order permitting the Company to conduct additional discovery concerning its Systems Support Specialist IV position, and (3) the court's denial of his motion to reconsider the granting of summary judgment. We reject grounds (2) and (3) as meritless and therefore do not address them in this opinion. In considering Appellant's challenge to the summary judgment, we view the evidence in the record in the light most favorable to Appellant, giving him the benefit of all credibility choices and any inferences that may reasonably be drawn in his favor.

[3] As we observe infra, the refusal to promote claim regarding two of the positions relates to the timeliness of the promotion.

2

termination of his employment was motivated by an intent to discriminate. The termination claim is presented here as a claim of retaliation for his engagement in activity protected under Title VII.

Title VII of the Civil Rights Act of 1964 forbids workplace racial discrimination. 42 U.S.C. § 2000e-2(a). Section 1981 prohibits intentional racial discrimination in the making and enforcement of private contracts, including employment contracts. 42 U.S.C. § 1981. Both Title VII and § 1981 have the same requirements of proof and use the same analytical framework. Standard v. A.B.E.L. Services, 161 F.3d 1318, 1330 (11th Cir. 1998). Accordingly, we apply cases from both bodies of law interchangeably. Shields v. Fort James Corp., 305 F.3d 1280, 1282 (11th Cir. 2002). With these principles in mind, we turn to Appellant's refusal-to-promote claims.

## A.

Appellant contends that, of the four positions at issue, he was denied a promotion to two: Client Interface Tool Leadership Role and ISO Manager II. He concedes that he obtained a promotion to the other two positions, Systems Support Specialist III and IV, but alleges that the Company was unduly slow – because of his race – in granting the promotion.

To establish a prima facie case of discrimination for failure to promote, a

3

plaintiff must prove: (1) that he was a member of a protected class; (2) that he was qualified for and applied for the position; (3) that he was rejected; and (4) that others who were not members of the protected class were hired. E.E.O.C. v. Joe's Stone Crabs, 296 F.3d 1265, 1273 (11th Cir. 2002).

A plaintiff who establishes a prima facie case raises a presumption that the employer illegally discriminated against him. The employer then has the burden of articulating legitimate, nondiscriminatory reasons for the adverse employment action. McDonnell Douglas v. Green, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If the employer fails to produce such evidence, the plaintiff is entitled to judgment. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993). On the other hand, if the employer articulates a legitimate reason for its action, the presumption of discrimination disappears. Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). The plaintiff must produce sufficient evidence to permit the fact-finder to conclude that the employer's stated reasons were not the real reasons for the employment decision. St. Mary's, 509 U.S. at 511, 113 S.Ct. at 2749. A plaintiff cannot prove pretext simply by showing that he was better qualified than the individual who received the position he wanted. Denney v. City of Albany, 247 F.3d 1172, 1187 (11th Cir. 2001). Disparities in qualifications are not enough

in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to "jump off the page and slap you in the face." Id. We now consider the four positions Appellant cites.

Client Interface Tool Leadership Role

Appellant complains that this position was given to a white woman who thereafter received many promotions. His problem is that when faced with the Company's motion for summary judgment, he did not contend that the Company had discriminated against him in awarding the position to the woman. Appellant therefore abandoned this claim, Allstate Insurance Company v. Swann, 27 F.3d 1539, 1544 (11th Cir. 1994), and we do not consider it.

ISO Manager II

Appellant asserts that Coca-Cola discriminated against him when it declined to interview him for this position and, instead, awarded it without an interview to Richard Hoefs, who, according to Appellant, was incompetent, unskilled as a manager, and had a history of unlawful discrimination.

The requirements for this promotion included one to three-years' management experience and effective project management skills. At the time the Company made the challenged decision, Appellant had no recent management experience and had managed only one project. Hoefs, on the other hand, had been

a manager for four years and had almost fourteen years of project management experience. Assuming that Appellant was qualified for the position and otherwise made out a prima facie case of discrimination, it is clear that Hoefs was well qualified and, in fact, was demonstrably more qualified than Appellant. In short, the Company presented a legitimate non-discriminatory reason for its decision, and Appellant presented nothing (but argument) to show that awarding the position to Hoefs was a pretext for discrimination.

Systems Support Specialist III

Appellant contends that Coca-Cola discriminated against him because of his race when it promoted Margot Beebe, Duncan Gibbs, and Randy Meyer to the Systems Support Specialist III position before it promoted him. In other words, the delay in promoting Appellant was motivated by an intent to discriminate.

**Beebe.** Beebe received this promotion in 1993. Appellant admitted that he was not qualified for the position in 1995 or 1996 because he lacked the requisite project management experience. If this was not a sufficient reason for denying this claim, the fact that the claim was time-barred is.[4]

---

[4] The district court held that Appellant's Title VII claims were timely filed to the extent they accrued on or after June 26, 1998 – 180 days before the commencement of the Ingram class action, which Appellant joined – and that his § 1981 claims were timely filed to the extent they accrued on or after December 20, 1995 – four years before he joined the class action. Neither party challenges these holdings.

6

**Gibbs.** Appellant contends Gibbs's promotion was the result of a conspiracy involving Hoefs to discriminate against him. The record shows, however, that Hoefs had no involvement in Gibbs's promotion; hence, no conspiracy and the only theory Appellant advanced for this claim collapses. Appellant complains of Gibbs's salary, but does so only by means of salary documents Appellant filed after the magistrate judge issued his report and recommendation to the district court. The district court properly refused to consider the documents, as they were not before the court. In sum, Appellant failed to establish a prima facie case concerning Gibbs's promotion.

**Meyer.** Appellant became a Systems Support Specialist III in July 1997. Meyer became a Systems Support Specialist III approximately one and one-half years later, when Coca-Cola hired him at that position. Appellant never contended that Meyer was not qualified for the position. He complains only that Meyer allegedly received higher salary. He supports this allegation by referring to documents concerning Meyer's purported salary that he filed only after the magistrate judge's report and recommendation had issued. As in the Gibbs situation, the documents were not before the court; thus, the court did not err in refusing to consider them.

Systems Support Specialist IV

7

Appellant contends that Coca-Cola discriminated against him when it promoted James Davis, Roy Gray, Randy Klein, Margot Beebe, and William Hangar to the Systems Support Specialist IV position. In responding to the Company's motion for summary judgment, however, Appellant said nothing in support of the Beebe and Hangar claims. The court therefore considered them abandoned. In his brief to us, he does not explicitly challenge the district court's ruling.

**Gray.** The Systems Support Specialist IV position that Gray received was specifically posted. Appellant admitted that he did not apply for the job. It is true that a nonapplicant may nonetheless establish a prima facie case by showing that he refrained from applying due to a justifiable belief that the employer's discriminatory practices made application a futile gesture. E.E.O.C. v. Joe's Stone Crab, 296 F.3d 1265, 1274 (11th Cir. 2002). Appellant, however, has not attempted such a showing. Consequently, he failed to establish a prima facie case. Even if we were to assume that he had, Coca-Cola proffered a nondiscriminatory explanation for hiring Gray: Gray's extensive database systems management experience and Appellant's lack of meaningful recent experience in that area. And Appellant has not shown that this explanation was a pretext for discrimination.

**Davis.** Coca-Cola reclassified Davis from Systems Support Specialist II to

8

Systems Support Specialist IV in July 1997. Davis was an acknowledged CICS expert. CICS was an important functional area in the Company's IS department, resulting in generally higher job grades and a greater likelihood of promotion than most other functional areas. The upgrade Davis received was based, at least in part on his CICS skills. Even if we assume that Appellant made out a prima facie case in this instance, he claim cannot succeed because he failed to present any meaningful evidence to establish pretext.

**Klein.** Klein began working for Coca-Cola two years before Appellant was hired. The Company "promoted" Klein to Systems Support Specialist III at the same time as it promoted Appellant to that position using the same reclassification process. Klein was promoted to Systems Support Specialist IV three months later. Appellant failed to present a prima facie case that Klein was treated more favorably that he was.

Summarizing, we hold that the district court properly granted Coca-Cola summary judgment on Appellant's "promotion" claims. We turn then to Appellant's claim that the Company, in evaluating his job performance for 1994, discriminated against him due to his race by downgrading him purportedly for communication problems.

Unfortunately for Appellant, in responding to Coca-Cola's motion for

summary judgment, he did not contend that the Company's adverse evaluation was the product of racial discrimination. In other words, he abandoned the claim' thus, it is not before us. Moreover, it is time-barred. See supra note 4.

## B.

In the district court, Appellant claimed that Coca-Cola terminated his employment because he is black. In his brief, he contends that his "former Counsel misrepresented the evidence and he should not have stated or raise (sic) an argument that [Appellant] was terminated because of his race." We consider this statement to mean that Appellant abandons any claim that his termination was discriminatory. In lieu of that claim, Appellant argues in his brief that the Company terminated his employment in retaliation for his participation in the Ingram class action.

To establish a prima facie case of retaliation, the plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was some causal relationship between the two events. Holifield, 115 F.3d at 1566. Protected expression involves opposing an employment practice made unlawful under Title VII or charging, testifying, assisting, or participating in a Title VII investigation, proceeding, or hearing. 42

U.S.C. § 2000e-3(a). Statutorily protected expression includes complaining to superiors about harassment in the work place, lodging complaints with the EEOC and participating in discrimination-based lawsuit. Pipkins v. City of Temple Trace, Fla., 267 F.3d 1197, 1201 (11th Cir. 2001). To establish the causal link requirement, the plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated. Holifield, 115 F.3d at 1566. The plaintiff must at least establish that the employer was actually aware of the protected expression at the time it took adverse employment action against the plaintiff. Id.

Once the plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the challenged employment action. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct, however, remains with the plaintiff. Id.

It is not the job of the federal courts to second-guess employer decisions as a kind of super-personnel department. E.E.O.C. v. Total System Services, 221 F.3d 1171, 1176 (11th Cir. 2000). Courts are not concerned with whether an employment decision is prudent or fair, but only with whether it was motivated by

11

unlawful animus. <u>Damon v. Fleming Supermarkets of Fla.</u>, 196 F.3d 1354, 1361 (11th Cir. 1999). An employer is entitled to rely on its good-faith belief that the employee has misbehaved in the workplace. <u>Total System Services</u>, 221 F.3d at 1176.

The district court concluded that Appellant presented a <u>prima facie</u> case of retaliation and that Coca-Cola offered a legitimate, nonretaliatory explanation for its termination of his employment, to-wit: its good-faith belief, following an investigation, that Appellant had threatened his supervisor, Hoefs. The investigators heard from multiple witnesses who claimed to have heard him Appellant yelling at Hoefs, and they listened to Appellant's tape recording of the event, a recording they said did not support Appellant's benign version of the event. The Company said that it terminated Appellant based on the findings of this investigation. Appellant has not shown that this explanation was a pretext for retaliation; thus, Coca-Cola was entitled to summary judgment on his retaliation claim.

C.

Appellant contends that he presented a triable claim for a race-based hostile work environment, pointing to the following incidents: (1) Hoefs and Howard conspired secretly to create documentation to terminate Appellant's employment,

12

documentation "of which [Appellant] has no knowledge about;" (2) Hoefs tracked Appellant's time although he was not an hourly employee; (3) Hoefs conspired with other employees, telling them to lie about not wanting to work with Appellant; (4) he was denied yearly training in 1996, the only employee in the department who did not receive such training; (5) Hoefs reprimanded him for making long-distance calls to Nigeria, but did not similarly reprimand other employees who made long-distance calls; (6) Hoefs assigned him to a lower grade job after he complained of discrimination; (7) Hoefs verbally assaulted him in the presence of others; (8) Hoefs made a baseless threat charge; and (9) Hoefs harassed him while he was at home on suspension.

The employee has the burden of proving a hostile work environment. Edwards v. Wallace Community College, 49 F.3d 1517, 1521 (11th Cir. 1995). To establish a hostile work environment, he must demonstrate five things, that (1) he belongs to a protected group; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic, here race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and thus create a discriminatorily abusive work environment; and (5) the employer is responsible for that environment under a theory of either direct or vicarious liability. Miller v. Kenworth of Dothan, 277 F.3d 1269, 1275 (11th Cir.

13

2002).  In prosecuting such claim, the employee should present concrete evidence in the form of specific facts, not just conclusory allegations and assertions.  Earley v. Champion Internat'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (disparate treatment case).

These hostile work environment claims contain both subjective and objective components.  Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc).  The employee must personally perceive the harassment as severe or pervasive.  Id.  Additionally, the environment must be one that a reasonable person in the employee's position would find hostile or abusive.  Id.  Four factors are important in analyzing whether harassment objectively altered the terms and conditions of the employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the employee's job performance.  Id.  Courts must consider the alleged conduct in context and cumulatively, looking at the totality of the circumstances.  Id. at 1242.

Title VII, however, is not a federal civility code.  Mendoza, 195 F.3d at 1245.  In a race-based case, harassing statements and conduct must be of a racial nature before they can be considered in determining whether the severe or

14

pervasive requirement is met. See Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 583 (11th Cir. 2000) (sexual harassment decision). Accordingly, innocuous or boorish statements or other behavior that does not relate to the race of the actor or the employee do not count. Id. Additionally, teasing, offhand comments, and isolated incidents (unless extreme) will not amount to discriminatory changes in the terms and conditions of employment. Mendoza, 195 F.3d at 1245.

Appellant failed to present sufficient evidence to make out a prima facie case of hostile work environment. The only incident of an objectively racial nature was Hoefs's "black, Nigerian boy" remark.[5] Hoefs may have expressed an intent to prepare a development plan with which Appellant could not live, but Appellant admitted that the plan Hoefs actually prepared had reasonable objectives. Virtually all of the complained-of incidents are entirely devoid of racial content. Appellant has not demonstrated how the incidents interfered with his job performance. Even if a jury believed that all of the incidents occurred, it could not reasonably find that they had been so severe and pervasive as to alter the terms and conditions of Appellant's employment. Given this state of the record, the district court was obliged to grant Coca-Cola summary judgment.

---

[5] Hoefs denied making this remark. Coca-Cola has never conceded that this remark, if made, was about Appellant. The Company, however, has not identified any other black, Nigerian male who worked under Hoefs's supervision. Accordingly, if a jury believed that Hoefs made the remark, it reasonably could believe that it referred to Appellant.

15

## II.

Appellant contends that the district court erred in granting Coca-Cola summary judgment on his state law negligence claims. His problem here is that he did not defend these claims in responding to the Company's motion for summary judgment. Because Appellant did not pursue the claim in the district court, the court did not consider it. We deem the claim abandoned.

**AFFIRMED.**