[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12540
Non-Argument Calendar
_____

D.C. Docket No. 0:11-cv-61971-JIC


STEVE JEFFERSON,

Plaintiff-Appellant,

versus

BURGER KING CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 29, 2013)

Before CARNES, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

Steve Jefferson, an African American proceeding *pro se*, appeals the district

court's grant of Burger King Corporation's ("Burger King") motion for summary judgment, and the denial of his cross-motion for summary judgment, as to his complaint alleging race discrimination and retaliation under Title VII, 28 U.S.C. § 2000e-2(a), 2000e-3(a), and 42 U.S.C. § 1981.  Jefferson alleges that Burger King discriminated against him by failing to promote him to positions as a Multi-unit Manager and Company Business Manager ("CBM"), and that Burger King discriminated and retaliated against him by transferring him to another restaurant and terminating his employment.

On appeal, Jefferson argues that, under a disparate-treatment theory, he presented sufficient evidence to establish a *prima facie* case of discriminatory failure to promote and of pretext under the traditional *McDonnell Douglas*[1] formulation.  Additionally, he argues that his statistical evidence regarding the racial composition of Burger King's workforce established a *prima facie* case of discriminatory failure to promote under both a disparate-treatment and disparate-impact theory.  Next, Jefferson argues that he presented sufficient evidence to support a *prima facie* case of discriminatory and retaliatory transfer, and that Burger King's justification for the transfer—its effort to promote sales—was pretext.  Similarly, he argues that he presented sufficient evidence to

---

[1] *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

support a *prima facie* case of discriminatory and retaliatory termination, and that Burger King's justification for his termination—written complaints against him—was pretext.[2]  In support of his last argument, Jefferson argues that the written complaints constituted inadmissible hearsay.

## I.

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party.  *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1161-62 (11th Cir. 2006).  Summary judgment is appropriate if the movant shows that no genuine issue of material fact exists, and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating that no genuine issue of material fact exists, *see Brooks*, 446 F.3d at 1162, although the non-moving party must make a sufficient showing on each essential element of his case for which he bears the burden of proof, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  A "mere scintilla" of evidence supporting the opposing party's position will not suffice.  *Brooks*, 446 F.3d at 1162.  We may affirm a grant of summary judgment on any basis supported by the

---

[2]  Jefferson also raises a "cat's paw" theory of discrimination with regard to his termination, but we do not consider this claim because he failed to first raise it with the district court.  *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331-35 (11th Cir. 2004).

3

record.  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009).

Title VII prohibits employers from engaging in practices that discriminate on the basis of race, and from discriminating against those who oppose any practices that are unlawful under it.  42 U.S.C. §§ 2000e-2(a), 2000e-3(a).  Likewise, all persons in the United States have the same right to make and enforce contracts.  42 U.S.C. § 1981(a).  Section 1981 encompasses claims of retaliation.  *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457, 128 S. Ct. 1951, 1961, 170 L. Ed. 2d 864 (2008).  We analyze Title VII and § 1981 claims using the same evidentiary requirements and analytical framework.  *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  A plaintiff may prove intentional discrimination through direct, circumstantial, or statistical evidence, and we evaluate claims supported by circumstantial evidence under the *McDonnell Douglas* burden-shifting framework.  *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).

Although the method of presenting a *prima facie* case is flexible, a plaintiff may generally establish a *prima facie* case of racial discrimination by showing that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse employment action; and (4) his employer treated similarly-situated employees outside of the protected class more favorably.  *See id*.

4

In the failure-to-promote context, a plaintiff may demonstrate that he is a member of a protected class and that he was qualified and applied for the promotion but was rejected despite his qualifications in favor of an equally or less qualified employee who was not a member of the protected class. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004). In some instances, a plaintiff of a protected class may prevail by showing that the position for which he applied remained open after the employer rejected him despite his qualifications. *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267-68 (11th Cir. 1999). A plaintiff may also establish a *prima facie* case of discriminatory discharge by demonstrating that he was: (1) a member of a protected class; (2) qualified for his job; (3) terminated; and (4) replaced by someone outside of the protected class. *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004). In order to make a valid comparison, the plaintiff must show that he and the comparator are similarly situated in all relevant respects. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

A plaintiff may establish a *prima facie* case of racial discrimination by presenting statistical proof of a pattern of discrimination, and substantial statistical proof alone may suffice to meet the plaintiff's *prima facie* burden. *See Hawkins v. Ceco Corp.*, 883 F.2d 977, 985 (11th Cir. 1989). Statistics without an analytical

5

foundation, however, are "virtually meaningless." *Wilson*, 376 F.3d at 1089 (quotation omitted).  Thus, we have concluded that a plaintiff failed to establish a *prima facie* case of discrimination through statistical evidence demonstrating that: (1) from May 1999 through June 2002, the employer had only two female vice presidents; and (2) since 1995, the employer chose only two female vice presidents to fill a total of forty-four open positions.  *Id*. at 1088-89.  We noted that the plaintiff's statistical evidence did not provide any other relevant information, such as the number of women who had expressed interest in the vice president positions.  *Id*. at 1089.

A plaintiff may establish a *prima facie* case of retaliation by demonstrating that he engaged in a protected activity and suffered an adverse employment action, and that the protected activity and adverse employment action were causally related.  *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).  In order to demonstrate causation, the plaintiff must only show that the protected activity and the adverse employment action are not completely unrelated.  *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

Once a plaintiff establishes a *prima facie* case of discrimination or retaliation, the employer may rebut the resulting presumption of discrimination or retaliation by articulating at least one legitimate, non-discriminatory or

6

non-retaliatory reason for its action. *See Alvarez*, 610 F.3d at 1264. If the employer articulates one or more such reasons, the plaintiff is afforded an opportunity to show that the employer's proffered reason is a pretext for discrimination or retaliation. *See id*. As he has the ultimate burden of demonstrating discrimination and/or retaliation, the plaintiff must meet the employer's reason head on and rebut it, and may not simply quarrel with the wisdom of the reason. *See Brooks*, 446 F.3d at 1162-63. He may do this either directly by persuading the court that a discriminatory or retaliatory reason more likely than not motivated the employer, or indirectly by showing that the proffered reason is unworthy of credence. *See Jackson v. State of Ala. Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). We must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered reason so that a reasonable factfinder could conclude that it is unworthy of credit. *Id*. To demonstrate pretext, the plaintiff must demonstrate both that the proffered reason is false and that discrimination or retaliation was the real reason for the adverse employment action. *See Brooks*, 446 F.3d at 1163.

In the end, our analysis is limited to whether a discriminatory and/or retaliatory animus motivated the employer. *See Alvarez*, 610 F.3d at 1266. That

7

an employer's legitimate belief was mistaken is irrelevant so long as such animus did not motivate the employer's decisions.  *See id*. at 1266-67; *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (holding that our inquiry was limited to whether the employer believed that the employee was guilty of harassment, and whether that belief was the reason for the employee's termination).  Conclusory allegations of discrimination or retaliation are, without more, insufficient to carry the plaintiff's burden.  *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996).

A plaintiff may also establish discrimination under a disparate-impact theory, which does not require a showing of intentional discrimination.  *See E.E.O.C. v. Joe's Stone Crabs, Inc.*, 220 F.3d 1263, 1273 (11th Cir. 2000).  The disparate-impact theory prohibits neutral employment practices that, while non-discriminatory on their face, result in an adverse and disproportionate impact upon a protected group.  *Id*. at 1274.  Under such a theory, the plaintiff must establish that (1) there is a significant statistical disparity between the proportion of members of the protected class available in the labor pool and the proportion of members of the protected class hired; (2) there is a specific, facially neutral employment practice; and (3) a causal nexus exists between the employment practice and the statistical disparity.  *Id*.

8

In support of a *prima facie* case, the plaintiff must offer statistical evidence of a kind and degree that is sufficient to show that the practice in question caused the exclusion of applicants for promotions because they belonged to a protected group. *Id*. at 1274-75. It is insufficient for the plaintiff to simply show an imbalance. *See MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 771 (11th Cir. 1991). Rather, the plaintiff must compare the racial composition of persons in the labor pool qualified for the position at issue with those persons actually holding the position, in addition to demonstrating that the employment practice is connected to the disparate impact. *See Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1520 (11th Cir. 1995). Thus, in order to adequately assess statistical data, evidence must exist that identifies the basic qualifications for the relevant job, as well as information on the relevant statistical pool of qualified applicants with which to make the appropriate comparisons. *See In re Employment Discrimination Litig. Against the State of Ala.*, 198 F.3d 1305, 1312 (11th Cir. 1999).

If the plaintiff establishes a *prima facie* case of disparate impact, the burden of production shifts to the defendant to establish that the challenged practice serves a legitimate, non-discriminatory business objective. *Joe's Stone Crab, Inc.*, 220 F.3d at 1275. Assuming that the employer meets its burden, the plaintiff may,

9

nonetheless, still prevail by proving that an alternative, non-discriminatory practice would have served the defendant's stated objective equally well. *Id*.

## II.

## A.

Jefferson did not establish a *prima facie* case of discriminatory failure to promote under the traditional *McDonnell Douglas* formulation because he did not identify a proper comparator or establish that any position that he applied for remained open after Burger King rejected his applications. The parties identified fifteen individuals who held either the Multi-unit Manager position or the CBM position. Jefferson, however, has not produced any evidence regarding these individuals' qualifications for either of these positions besides the conclusory allegation that his track record of running multiple stores meant that he had superior qualifications compared to eight non-African-American single-store managers. Accordingly, Jefferson has failed to carry his burden of demonstrating that Burger King rejected him for a promotion in favor of another individual who was equally or less qualified. *Cf. Wilson*, 376 F.3d at 1089.[3]

---

[3] Jefferson has also failed to establish that a CBM vacancy for which he applied remained open beyond Burger King's rejection of his applications. *See Schoenfield*, 168 F.3d at 1267. The action logs Jefferson submitted do not indicate the dates upon which the vacancies for the relevant positions opened or closed, but instead they show only that Burger King was no longer considering candidates on the date that it reviewed Jefferson's applications.

10

Likewise, although the United States Equal Employment Opportunity Commission ("EEOC") report Jefferson submitted shows a large percentage of African Americans employed *nationwide* as service workers compared to other positions, this statistical evidence is insufficient to establish a *prima facie* case of discriminatory failure to promote under either a disparate-treatment or disparate-impact theory. First, the EEOC report does not define the racial composition of the pool of individuals who were qualified for the CBM position nor the racial composition of the pool of individuals who applied for CBM (or other higher-level management) positions. *See Wilson*, 376 F.3d at 1089 ("This statistical evidence is not even probative of pretext because Wilson has not provided any other relevant information, including the number of women who expressed interest in vice president positions."). Second, the EEOC report only defines the racial composition of Burger King's workforce for a single two-week period in July 2008. Third, the EEOC report contains nationwide statistics, and nothing in the report can be distilled regarding hiring practices in South Florida. Given Jefferson's failure to establish a basis for comparison, this statistical data is "virtually meaningless." *Id.*

With regard to the South Florida market, Jefferson alleges that, from 2005 to the time he was terminated, Burger King only had one African-American

11

CBM.[4]  Again, Jefferson fails to offer any statistics for comparison, such as how many African Americans applied for CBM positions in South Florida or what percentage of these African-American applicants were qualified for these positions.

The district court properly granted Burger King's motion for summary judgment as to Jefferson's failure-to-promote claims.

## B.

The district court also properly granted Burger King's motion for summary judgment as to Jefferson's discriminatory and retaliatory transfer claims.  Even assuming a *prima facie* case of discriminatory and retaliatory transfer, Jefferson did not present sufficient evidence to demonstrate that Burger King's proffered reason for Jefferson's transfer was pretext.  Burger King proffers that it transferred Jefferson because it decided to place successful general managers at restaurants that had high business potential but comparatively low sales.  Jefferson argues that this stated reason was pretext for discrimination because his new store did not in fact have poor sales when he was transferred.  But the evidence presented suggests otherwise.  First, Jefferson was not the only employee transferred to boost sales; in

---

[4] After his termination, Burger King hired at least one additional African-American CBM.

12

fact, Burger King similarly transferred at least eleven non-African-American employees.  Second, Jefferson himself testified that, in his first forty-five days at the new store, the store had the biggest increase in performance in the market. Jefferson has failed to produce significant probative evidence that Burger King's proffered reason was mere pretext for discrimination.  *See Mayfield*, 101 F.3d at 1376.

The district court properly granted Burger King's motion for summary judgment as to Jefferson's discriminatory and retaliatory transfer claims.

## C.

Finally, the district court properly granted Burger King's motion for summary judgment as to Jefferson's discriminatory and retaliatory discharge claims.  Even assuming a *prima facie* case of discriminatory and retaliatory discharge, Jefferson has failed to present sufficient evidence of pretext to survive summary judgment on these claims.  Burger King asserts that Jefferson was terminated for creating a hostile work environment and presented thirteen handwritten complaints from employees about Jefferson.  These complaints cited, *inter alia*, Jefferson's use of abusive language to fellow employees, Jefferson's sexually inappropriate behavior, and Jefferson's inappropriate behavior in front of

13

customers.  Jefferson claims that the employee complaints are hearsay.[5]  However, these complaints are not hearsay because they were not offered for the truth of the matter asserted; instead, they were offered only to establish that Burger King had legitimate, non-discriminatory reasons for terminating Jefferson's employment. *See Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1322-23 & n.4 (11th Cir. 1982).  Jefferson has not presented sufficient evidence that Burger King's reliance on these written complaints was pretext for discrimination or retaliation.

The district court properly granted Burger King's motion for summary judgment as to Jefferson's discriminatory and retaliatory discharge claims.

### III.

After a careful and thorough review of the record and the parties' briefs, we affirm.

**AFFIRMED.**

---

[5]  Hearsay is any out-of-court statement that is offered to prove the truth of the matter asserted in the statement.  Fed. R. Evid. 801(c).  Hearsay statements are generally inadmissible.  Fed. R. Evid. 802.